McDONALD, Chief Justice.
In this petition Thomas R. Schwarz, a member of The Florida Bar, seeks the appointment of an ad hoc commission to study and report “on the legality, propriety, scope, and procedures, if any, through which this Court may exercise political power considering Articles I, II, and V of the Florida Constitution, the Code of Judicial Conduct, and such other materials and ethical principles as it may deem appropriate.” The request comes not because of direct action taken by members of this Court, but because of the legislative and lobbying activities of The Florida Bar.
Prior to filing this petition, Schwarz proposed to the bar an amendment to rule 2-3.2(c)(4), Rules Regulating The Florida Bar, reading as follows:
a. provided however that no such program shall consider or concern itself with current proposed or contemplated changes in the law except those directly related to the organization, administration, funding, creation or supervision of the system of Courts or the licensing, *57 admission to practice or disciplining of lawyers and further provided that such programs of information and advice shall be executed by formal written communication by the Board of Governors (showing members’ dissent where applicable) to the officials of the courts or other branches of government. No funds shall be expended for lobbying or public relations activity in association with any program developed under this section nor contributed to any Political Action Committee.
When he filed the instant petition, Schwarz’ proposal had neither been formally accepted nor rejected by the board of governors. Schwarz avers that this Court has failed to place limits on or define the scope of “its delegation of political activity to its official arm.”
In In Re Amendment to Integration Rule of The Florida Bar, 439 So.2d 213, 213 (Fla.1983), we rejected the following proposal: “The Board of Governors shall not engage in any political activity on behalf of The Florida Bar nor expend money or employ personnel for such purpose.” In doing so, we restated the purpose of the bar as being “ ‘[t]o inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence.’ ” Id. (quoting Fla. Bar Integr. Rule, Preamble).[1] We stated: “Clearly the improvement of the administration of justice and the advancement of the science of jurisprudence is a compelling state interest.” Id. Later in the opinion we cited acts of The Florida Bar that we felt were within the purpose of the Florida bar.[2] Id. at 214. Nevertheless, the definition of what activities are proper and what are improper continues to be a matter of dispute. We have not said what clearly should be excluded; perhaps we should.
To practice law in the courts of Florida we require that all lawyers be members of The Florida Bar. Exception can be made for a particular case, but, for the day-by-day practice, there is no exception — membership in The Florida Bar is compelled.[3] This compelled membership should limit the activities of The Florida Bar to the stated purposes. Some of the most sensitive differences of opinion among members of the bar originate from a disagreement about whether or not courses of action taken by the bar’s governing body fall within or without those stated purposes. Florida is not unique in this dialogue.[4]
The Supreme Court of New Hampshire in In re Chapman, 128 N.H. 24, 509 A.2d *58 753 (1986), recently wrestled with this problem. In that case, Chapman sought to have the court enjoin the New Hampshire Bar Association (an integrated bar similar to Florida’s) from actively opposing so-called “tort reform” legislation. The court noted that the issue was whether or not the board’s decision to oppose tort reform was inconsistent with the powers and authorities conferred upon the bar association. The New Hampshire Court commented that it “is obligated to interpret the limits on bar activities so as to preclude the first amendment infringement that would result if the Association were to take positions on issues outside the scope of those responsibilities that justify compelling lawyers to belong to it.” Id. at 31, 509 A.2d at 758. It then stated:
In view of the Association’s special status as a unified bar, we conclude that concerns for first amendment liberties require a narrower view of its permitted legislative activities than the Association has taken. Hence, the Association should limit its activities before the General Court to those matters which are related directly to the efficient administration of the judicial system; the composition and operation of the courts; and the education, ethics, competence, integrity and regulation, as a body, of the legal profession. The Board’s opposition to tort revision as a whole is not within the mandate of the Association’s constitution. ...
We believe that circumspection is the watchword to be observed by the Board. Where it can reasonably be argued that an issue is outside the scope of its authority, the Board should take no position on the matter. Where substantial unanimity does not exist or is not known to exist within the bar as a whole, particularly with regard to issues affecting members’ economic self-interest, the Board should exercise caution. Positions taken by the Association and its Board should be tailored carefully and limited to issues clearly within the Association’s constitutional mandate.
Id. at 32, 509 A.2d at 759.
We make no decision today on whether any existing specific activity of The Florida Bar is improper. We suggest, however, that the board of governors review its policies and current positions concerning political activity in light of the decisions of other jurisdictions.
This area needs further study. We decline to appoint a special committee as requested by Schwarz, but refer this matter to the Judicial Council for its comments and recommendations. We ask for a report from that body prior to the end of this calendar year. Schwarz’ petition is granted to the extent set out in this opinion; any requests not discussed herein are denied.
It is so ordered.
OVERTON, EHRLICH, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.

. The same language is now included in rule 1-2, Rules Regulating the Florida Bar.

. In approving the board of governors’ engaging in political activities we relied on the existence of standing board policy 900, which provides that a position may not be taken on proposed legislation unless the board determines that the legislation is related to the purposes of the bar. The board’s decision may not be determinative, however, because the proposed action may not be within the range of permissible activities. The final determination of what should or should not be done does not necessarily rest with the board of governors.

. Two courts have recently found compulsory bar membership unconstitutional. Schneider v. Colegio de Abogados, 682 F.Supp. 674 (D.Puerto Rico 1988) (failure to protect dissenters' rights makes compelled membership in bar association unconstitutional); Levine v. Supreme Court, 679 F.Supp. 1478 (W.D.Wis.1988) (mandatory bar membership is a constitutionally impermissible burden on an individual’s rights of association and speech).

. Several courts in addition to those listed in note 3, supra, have considered the impact of compulsory bar associations’ activities on their members’ rights. Arrow v. Dow, 544 F.Supp. 458 (D.N.M.1982) (bar may use dues to support only functions and duties which serve important governmental functions; lobbying at issue did not do so); Virgin Islands Bar Ass’n v. Government of Virgin Islands, 648 F.Supp. 170 (D.V.I.1986) (low-profile, nonpartisan bar association’s limited legislative activity does not infringe on dissenters’ rights); Bridegroom v. State Bar, 27 Ariz.App. 47, 550 P.2d 1089 (1976) (approved bar association’s use of dues to advocate passage of a state constitutional amendment); Keller v. State Bar, 181 Cal.App.3d 471, printed at 190 Cal.App.3d 1196, 226 Cal.Rptr. 448 (state bar may not use compulsory dues to support ideological or political causes not germane to its statutory purposes), review granted, — Cal.3d -, 723 P.2d 1, 229 Cal.Rptr. 144 (1986); Petition to Amend Rule 1 of Rules Governing the Bar, 431 A.2d 521 (D.C.1981) (denied amendment limiting use of compulsory dues); In re Florida Bar Board of Governors Action, 217 So.2d 323 (Fla.1969) (denied petition for review, but did not adopt Justice Hopping’s view that bar had virtually unlimited power to expend moneys for lobbying); Falk v. State Bar, 418 Mich. 270, 342 N.W.2d 504 (1983) (bar’s use *58 of mandatory dues in connection with political activities is a substantial governmental interest which outweighs infringement of dissenter’s negative first amendment interests); Reynolds v. State Bar, 660 P.2d 581 (Mont.1983) (state bar may not use compulsory dues for lobbying unless it makes refunds to dissenters); Petition of Chapman, 128 N.H. 24, 509 A.2d 753 (1986) (bar must carefully tailor its position on legislative activities to limited issues within its constitutional mandate in order to protect its members’ individual rights); Petition to Review State Bar Bylaw Amendments, 139 Wis.2d 686, 407 N.W.2d 923 (1987) (approves procedure by which member may challenge dues' use for legislative activities). See also Falk v. State Bar, 411 Mich. 63, 305 N.W.2d 201 (1981); Sorenson, The Integrated Bar and the Freedom of Nonassociation—Continuing Seige, 63 Neb.L.Rev. 30 (1983); Annot., 40 A.L.R. 4th 672 (1985).