GRIMES, Justice.
This is a continuation of The Florida Bar re Schwarz, 526 So.2d 56 (Fla.1988), on the issue of what lobbying activities of The Florida Bar are permissible. As a creation of this Court, The Florida Bar is under our supervision and subject to our regulation.
In the original Schwarz opinion, we referred this matter to the Judicial Council for its comments and recommendations. The Council conducted public hear *1095 ings on the subject. In its report, the Council first concluded that The Florida Bar could constitutionally engage in activities directed toward the administration of justice and the advancement of the science of jurisprudence. The report then stated:
The integrated bar offers specialized skills, training, education, and experience with which to serve in an advisory function to the various branches of state government. The Council submits that the advice of the Bar is important to the legislature’s deliberations within areas pertaining to the administration of justice. These issues may frequently be technical and complex and have effects not otherwise contemplated by the legislation. It appears that the Bar has an obligation, grounded upon the mandate of the integration rule setting forth the Bar’s very purpose for existence, to speak out on appropriate issues concerning the courts and the administration of justice and advise the legislative and executive branches of government of its collective wisdom with respect to these matters. To prohibit such communication would work a grave disservice to the people of this state and would infringe upon the free speech of the great majority of the state’s attorneys. The Florida Bar has a reputation of pursuing improvements in the administration of justice and science of jurisprudence. The relative weight to be accorded these compelling interests appears to be of such great importance as to fully justify the relatively insignificant intrusion occasionally experienced by dissenting members of the Bar.
Judicial Council of Florida, Special Report to the Florida Supreme Court on Legislative Activities of The Florida Bar 6-7 (Dec. 1988) (on file with the Florida Supreme Court) [hereinafter Special Report on Legislative Activities]. In seeking to define the administration of justice and the advancement of the science of jurisprudence, the Council recommended that the following subject areas be recognized as clearly justifying legislative activities by the Bar:
(1)Questions concerning the regulation and discipline of attorneys;
(2) matters relating to the improvement of the functioning of the courts, judicial efficacy and efficiency;
(3) increasing the availability of legal services to society;
(4) regulation of attorneys’ client trust accounts; and
(5) the education, ethics, competence, integrity and regulation as a body, of the legal profession.
Special Report on Legislative Activities, supra, at 9. The Council also recommended that the following additional criteria be used to determine “the type of proposed legislative initiatives the Bar may become actively involved with when the legislation appears to fall outside of the above specifically identified areas:”
(1) That the issue be recognized as being of great public interest;
(2) that lawyers are especially suited by their training and experience to evaluate and explain the issue; and
(3) the subject matter affects the rights of those likely to come into contact with the judicial system.
Id. at 9-10.
Thereafter, we entertained comments in response to the report and heard oral argument on the subject. Upon consideration, we have concluded that the Council’s recommendations are well taken.
The Florida Bar was integrated by this Court in Petition of Florida State Bar Association, 40 So.2d 902 (Fla.1949). Justice Terrell, writing for the majority, defined the integrated bar “as the process by which every member of the bar is given an opportunity to do his part in performing the public service expected of him, and by which each member is obliged to bear his portion of the responsibility.” Id. at 904. He further stated that integration “provides a fair and equitable method by which every lawyer may participate in and help bear the burden of carrying on the activities of the bar instead of resting that duty on a voluntary association composed of a minority membership.” Id.
As noted by Justice Terrell:
*1096 Bar integration grew from a felt necessity for an organization that could speak for the profession in esse. It is not a compulsory union but a necessary one to secure the composite judgment of the bar on questions involving its duty to the profession and the public....
... The assault on our institutions which the bar is expected to take the leading role in challenging also requires the full manpower of the bar. We do not think bar integration would be worth the candle as a specific for unethical conduct, but as a means of giving the bar a new and enlarged concept of its place in our social and economic pattern....
Id. at 908 (emphasis added).
In 1969 this Court denied a petition seeking to prevent the Board of Governors of The Florida Bar from lobbying for the adoption of the proposed revision of the Florida Constitution. In re Florida Bar Board of Governors Action, 217 So.2d 323 (Fla.1969). In a concurring opinion, Justice Hopping succinctly observed:
Since the inception of The Florida Bar,' the Board of Governors has faced up to its professional responsibility of acting in the spirit of public service and has prepared and advocated adoption by the State Legislature of numerous enactments, including the Mechanics’ Lien Law, the Uniform Commercial Code, the Public Defenders’ Act, the law providing for filing of administrative rules in the Office of the Secretary of State, and major reforms in the substantive law of this State. It has sponsored adoption by the Legislature and the electorate of Florida, several constitutional amendments including the amendment creating the District Courts of Appeal and the Judicial Qualifications Commission. It has consistently advocated in the Legislature various improvements in the judicial system. Some of these matters were directly related to the administration of justice, some were totally unrelated to the administration of justice, and others were "political” in nature, using the word “political” in its broad sense as pertaining to the organization or administration of government.
Id. at 324 (Hopping, J., concurring).
In 1983 this Court denied a petition seeking to amend the integration rules to prevent the Board of Governors from engaging in any political activity on behalf of The Florida Bar. In re Amendment to Integration Rule of The Florida Bar, 439 So.2d 213 (Fla.1983). In reaching our conclusion, we pointed out that:
[Pjetitioners are made cognizant of the fact that any attorney “is still free to voice his own views on any subject in any manner he wishes. He can do this even though such views be diametrically opposed to the position taken by the unified bar of his state.” In re Unification of the New Hampshire Bar, 109 N.H. 260, 266, 248 A.2d 709, 713 (1968). This may take the form of working within The Bar itself or its committees or it may be through external means. But he is never forced to adhere to or proclaim any political view or engage in any personally-repugnant political activity.
Id. at 215.
The California Supreme Court recently passed on the lobbying authority of its state bar which levies membership dues without the possibility of partial rebate. Reasoning that the words “advancement of the science of jurisprudence” and “improvement of administration of justice” should be read broadly in the context of lobbying activities, the court held that the bar was authorized to comment generally upon proposed legislation. Keller v. The State Bar of California, 47 Cal.3d 1152, 767 P.2d 1020, 255 Cal.Rptr. 542 (1989), cert. granted, — U.S. — , 110 S.Ct. 46, 107 L.Ed.2d 15 (1989). While that decision was broader than the one we reach today, we find most pertinent the following observation of the California court:
Laws are the business of lawyers. The drafting of a proposed law, the understanding of the relationship between that law and existing legislation, and the appreciation of the practical impact of the proposed legislation are matters which often require expert legal knowledge and *1097 judgment. Whatever the subject of the proposed law, it is likely that among the members of the State Bar are some with the needed expertise, whose collective advice can lead to significant improvements in the legislative proposal. “The state has a valid interest in drawing upon [lawyers’] training and experience in order to promote improvements in the administration of justice and to advance jurisprudence. The better attuned the legal machinery is to the public’s needs of health, safety, and welfare, the better the state will be able to perform its job of protecting and serving the public. The input and feedback on proposed legislation and court rules is invaluable to the state in fine-tuning its legislative and judicial systems.”
Id. at 1169, 767 P.2d at 1030-31, 255 Cal.Rptr. at 552-53 (citation and footnote omitted).
Several portions of the Rules Regulating The Florida Bar also support our conclusion. Thus, rule 1-2 states:
The purpose of The Florida Bar shall be to inculcate in its members the principles of duty and service to the public, to improve the administration of justice, and to advance the science of jurisprudence.
Rule 2-3.2 of the Rules Regulating The Florida Bar further provides:
Subject to the continued direction and supervision by the Supreme Court of Florida, the board of governors may, by amendment to this chapter, take all necessary action to:
[[Image here]]
(c) Establish, maintain and supervise:
[[Image here]]
(4) A program for providing information and advice to the courts and other branches of government concerning current law and proposed or contemplated changes in the law.
Most significantly, rule 2-9.3 of the Rules Regulating The Florida Bar specifies in part:
RULE 2-9.3 LEGISLATIVE POLICIES
(a) The board of governors shall adopt and may repeal or amend rules of procedure governing the legislative activities of The Florida Bar in the same manner as provided in rule 2-9.2; provided, however, that the adoption of any legislative position shall require the affirmative vote of two-thirds of those present at any regular meeting of the board of governors or two-thirds of the executive committee or by the president, as provided in the rules of procedure governing legislative activities.
This rule insures that The Florida Bar will take a legislative position only after first independently focusing on the question of whether the subject matter is one in which the organized bar should become actively involved. In reaching this determination, the Board of Governors should refer to the criteria set forth in this opinion. However, we also suggest that the Board exercise caution in the selection of subjects upon which to take a legislative position so as to avoid, to the extent possible, those issues which carry the potential of deep philosophical or emotional division among the membership of the Bar. In any event, we also wish to make clear that any member of The Florida Bar in good standing may question the propriety of any legislative position taken by the Board of Governors by filing a timely petition with this Court.
In The Florida Bar re Amendment to Rule 2-9.3, 526 So.2d 688 (Fla.1988), we approved an amendment to the Rules Regulating The Florida Bar to provide the mechanism for a lawyer who objects to legislative positions taken by The Florida Bar to obtain a partial rebate of bar dues. As part of the process, The Florida Bar is required to publish notice of adoption of legislative positions in The Florida Bar News in the issue immediately following the board meeting at which the positions are adopted. In this manner, lawyers are alerted to the legislative positions being taken by The Florida Bar and by registering their objections they may be relieved of paying for their share of the expense attributable to the advocacy of the legislative positions with which they disagree. Consistent with the response filed by The Florida Bar in this action, we ask the Board of *1098 Governors to submit proposed amendments to this rule which will make clear that the Bar carries the burden of proof in such proceedings and providing that the names of objecting bar members, at their option, be kept private.
We approve the recommendations of the Judicial Council and adopt them as guidelines to be followed with respect to determining the scope of permissible lobbying activities of The Florida Bar.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, j., dissents with an opinion.