PER CURIAM.
David P. Frankel (Frankel), a member in good standing of The Florida Bar, petitions this Court to enjoin The Florida Bar, both pendente lite and thereafter, from engaging in certain allegedly impermissible legislative lobbying positions taken by the board of governors. In addition, Frankel requests a pro rata refund of that portion of his mandatory dues applicable to the impermissible lobbying positions. As a creation of this Court, The Florida Bar is under our *1296 supervision and subject to our regulation.[1] We grant Frankel’s requested injunction, although not pendente lite, and his requested dues refund.
The board of governors adopted the following lobbying positions and published them in The Florida Bar News:
6. Supports the recommendations of The Florida Bar Commission for Children relating to:
a. Expansion of the women, infants and children (WIC) program.
b. Extension of Medicaid coverage for pregnant women.
c. Full immunization of children.
d. Establishing children’s services councils.
e. Family life and sex education/teen pregnancy prevention.
f. Increasing Aid to Families with Dependent Children.
g. Enhanced child-care funding and standards.
h. Creation of children’s needs consensus estimating conference.
i. Establish family court divisions in each circuit.
j. Termination of parental rights/revision of Chapter 39, F.S.; cocaine-exposed infants.
k. Guardians Ad Litem-dissolution and custody.
l. Establish foster care review boards.
m. Eliminate select public disclosure exemptions in child abuse cases.
n. Development of juvenile offender rehabilitation and treatment programs.
The Florida Bar News, Oct. 15, 1990, at 4, col. 2. In his petition, Frankel challenges lobbying positions 6.a. through 6.h. as being beyond the scope of permissible bar lobbying activities. He makes no claim as to the propriety of the other positions.
To determine the propriety of the contested bar lobbying positions, we turn to The Florida Bar re Schwarz, 552 So.2d 1094 (Fla.1989), cert. denied, — U.S. —, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). There, we adopted the Judicial Council of Florida’s[2] recommendation that the following areas clearly justify bar lobbying activities:
(1) Questions concerning the regulation and discipline of attorneys;
(2) matters relating to the improvement of the functioning of the courts, judicial effficacy and efficiency;
(3) increasing the availability of legal services to society;
(4) regulation of attorneys’ client trust accounts; and
(5) the education, ethics, competence, integrity and regulation as a body, of the legal profession.
552 So.2d at 1095. We also adopted the council’s recommendation that the following additional criteria be used to determine permissible bar lobbying activities when the legislation falls outside of the above specifically identified areas:
(1) That the issue be recognized as being of great public interest;
(2) that lawyers are especially suited by their training and experience to evaluate and explain the issue; and
(3) the subject matter affects the rights of those likely to come into contact with the judicial system.

Id.

The Florida Bar carries the burden of proof in establishing the propriety of its lobbying activities. Schwarz; Gibson v. The Florida Bar, 798 F.2d 1564 (11th Cir.1986); see R. Regulating Fla. Bar 2-9.3. *1297 We fail to see how the contested lobbying positions fall within the five areas which clearly justify bar lobbying activities. The bar contends that its involvement in children’s matters clearly justifies advocacy of the contested positions due to their relationship to the ethics and integrity of the legal profession. Any such interpretation of the fifth guideline, however, is strained at best, and we reject the bar’s analysis. Thus, we must examine the propriety of the contested lobbying positions under the three additional criteria set forth in Schwarz.
Before analyzing the propriety of the contested bar lobbying positions under the three additional criteria of Schwarz, we must first address Frankel’s claim that, in light of Keller v. State Bar of California, — U.S. —, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), the additional criteria violate the first and fourteenth amendment rights of dissenting bar members to be free from compelled speech and association. Because we find the additional criteria set forth in Schwarz to be consistent with the pronouncement of the Court in Keller, we reject Frankel’s argument.
Relying on Abood v. Detroit Board of Education, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), and Ellis v. Brotherhood of Railway, Airline, & Steamship Clerks, 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), Keller held that a compulsory state bar association may constitutionally fund with mandatory dues only those activities “germane” to its purpose, i.e., activities necessarily or reasonably incurred for the purpose of regulating the legal profession or improving the quality of legal services. This Court in Schwarz adopted guidelines to define those activities “germane” to the purpose of The Florida Bar, but, in contrast to Keller, delineated that purpose as to improve the administration of justice and advance the science of jurisprudence. See In re Amendment to Integration Rule, 439 So.2d 213 (Fla.1983). We recognize that Keller reversed the California Supreme Court’s decision in Keller v. State Bar of California, 47 Cal.3d 1152, 767 P.2d 1020, 255 Cal.Rptr. 542 (1989), wherein it held that the state bar association could permissibly lobby on activities “germane” to the identical purpose defined in Schwarz. Upon first glance that decision may appear to have an impact on Schwarz. We find the California Supreme Court’s decision, however, distinguishable from Schwarz.
To begin with, the California Supreme Court analogized its state bar association to a governmental agency and concluded that the first amendment restraints placed on the expenditure of compulsory union dues, as set forth in Abood, were inapplicable. In Keller the United States Supreme Court rejected this analogy and based its decision in part upon Abood. This Court likewise has adopted Abood’s rationale and applied it in determining permissible lobbying activities of The Florida Bar. See In re Amendment to Integration Rule; Schwarz. We adopted the guidelines in Schwarz, to define the bar’s purpose of improving the administration of justice and advancing the science of jurisprudence, in keeping with Abood.
In addition, we do not find a measurable difference between allowing bar lobbying activities for the purpose of regulating the legal profession or improving the quality of legal services and allowing lobbying activities for the purpose of improving the administration of justice or advancing the science of jurisprudence as defined in Schwarz. This conclusion is consistent with the United States Supreme Court. Keller, 110 S.Ct. at 2236 (“Simply putting this language alongside our previous discussion of the extent to which the activities of the State Bar may be financed from compulsory dues might suggest that there is little difference between the two.”). Keller only found fault with the California Supreme Court’s broad definition of the latter terms as evidenced by the activities which it found to be permissible lobbying activities, essentially all proposed legislation. On the other hand, in Schwarz we expressly stated that our definition of those purposes was not as broad as that given by the California Supreme Court and adopted guidelines to limit bar lobbying activities accordingly. Schwarz, 552 So.2d *1298 at 1096. Thus, after a careful analysis of Keller, we conclude that it does not require us to revisit the adoption of the additional criteria in Schwarz, as they are consistent with Keller’s holding.
We now return to our analysis of the propriety of the contested lobbying positions under the three additional criteria of Schwarz. With regard to the first criterion, neither party disputes that children’s issues are of great public interest, and we agree. Whether the contested lobbying positions satisfy the second criterion, i.e., that lawyers are especially suited by their training and experience to evaluate and explain the issue, is more problematical. The bar argues that its involvement in children’s issues — evidenced by a special issue of The Florida Bar Journal solely devoted to children’s topics; The Florida Bar Commission for Children (composed of lawyers, physicians, community leaders, legislators, and business executives) which for two years examined children’s issues, societal problems, and the role of lawyers in contributing to the solution of these problems and recommended advocacy of the legislative positions at issue in the instant case; and the bar’s moral obligation to Florida’s children — verifies the suitability by training and experience within the legal profession to evaluate and explain the contested lobbying positions.
Although we commend The Florida Bar for its involvement with children’s issues and find the positions certainly laudable, the bar has failed to prove that advocacy of the contested lobbying positions satisfy the second criterion. The merit of the position or the unanimity in its support is not the standard by which to determine the propriety of bar lobbying activities on that position.[3] The bar has no specialized expertise regarding the subjects of expansion of the women, infants, and children program; extension of Medicaid coverage for pregnant women; full immunization for children; establishing children’s services councils; family life and sex education/teen pregnancy; increasing aid to families with dependent children; enhanced child-care funding and standards; or creation of a children’s needs consensus estimating conference. Nor has the bar obtained such expertise through publication of a special Journal issue or by establishing committees to study the area. Because the bar’s lobbying positions 6.a. through 6.h. do not fall within the Schwarz guidelines, we find them to be outside the scope of permissible bar lobbying activities.[4]
We next address Frankel’s claim that The Florida Bar must recognize its members’ general objections to the use of their compulsory dues to fund legislative lobbying activities. Frankel claims that the bar’s objection procedure, which requires objections on an issue-by-issue basis, forces dissenters to reveal their own beliefs and political positions in violation of Abood. We disagree.
Initially, we note that Frankel’s general objection, which he claims is sufficient under Abood, merely states that “I hereby demand that no portion of my compulsory dues be used directly or indirectly to fund or support any legislative lobbying or ami-cus filings by or on behalf of The Florida Bar.” Such an objection is insufficient under Abood because it is directed against all lobbying activities instead of only those activities which fall beyond the scope of permissible bar lobbying activities.
Moreover, the bar’s objection procedure has been upheld in Gibson v. The Florida Bar, 906 F.2d 624, 632 (11th Cir.1990), cert. granted, — U.S. —, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991), which addressed this issue and stated:
As the Supreme Court has stated, the dissenter “has the burden of raising an objection.” Chicago Teachers [Union v. Hudson ], 475 U.S. [292] at 306,106 S.Ct. [1066] at 1075 [89 L.Ed.2d 232] [ (1986) ] (citing Abood, 431 U.S. at 239-40 & n. 40, 97 S.Ct. at 1801-02 & n. 40). This bur *1299 den “is simply the obligation to make his objection known.” Id. at 306 n. 16, 106 S.Ct. at 1075 n. 16. The affirmative objection requirement here is within the scope of this obligation. It merely requires the objector to inform the Bar that he objects to the Bar’s use of compulsory dues to support a given legislative policy. Beyond that, the objector need not provide any further information concerning the motivation for his objection or his own position concerning the legislative policy at issue.
We agree with the rationale of Gibson. Dissenters only need to object on the basis that the bar’s announced lobbying position is outside the scope of its permissible lobbying activities. The procedure does not require them to reveal their own ideological positions.
Nor is The Florida Bar’s objection procedure overly burdensome on the dissenting bar member, another concern expressed in Abood. The board of governors is required to publish its lobbying positions in the issue of The Florida Bar News immediately following the meeting at which it adopts those positions. R. Regulating Fla. Bar 2-9.3(b). Bar members need only read the lobbying positions adopted by the board of governors in The Florida Bar News and, if they believe that the positions are outside the Schwarz guidelines, submit a written objection.
Lastly, there remains the question of determining the appropriate remedy under the circumstances of this case. Certainly, Frankel is entitled to a refund of his bar dues amounting to a proportionate share of the amount spent on the contested lobbying activities plus interest at the statutory rate. See Gibson, 906 F.2d 624; R. Regulating Fla. Bar 2-9.3. However, Frankel additionally petitions this Court to enjoin the bar, both pendente lite and thereafter, from lobbying on these issues. We grant the injunction but not pendente lite.[5]
This Court has yet to address whether a dissenting bar member may enjoin the bar from lobbying on positions outside the guidelines set forth in Schwarz. And the Supreme Court expressly refused to consider whether a dissenting bar member could enjoin the bar from lobbying on activities not germane to the bar’s purpose in Keller.[6] Keller, however, analogized a mandatory state bar association to a compulsory union in reaching its decision. Within the context of a union-shop agreement, the Court previously has held that an injunction prohibiting a union from expending mandatory dues for political purposes would be inappropriate because nondissent-ing union members have an interest in stating their views “without being silenced by the dissenters.” International Association of Machinists v. Street, 367 U.S. 740, 773, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1961); see Abood.
We find that the concern expressed in Street is inapplicable with regard to The Florida Bar. An injunction prohibiting the bar from lobbying on a particular issue would not silence the voices of nondissent-ing members. The bar has many volunteer sections and political action committees through which bar members may assert their views. See In re Amendment to Integration Rule; Schwarz, (McDonald, J. dissenting). Indeed, these volunteer sections and committees are the appropriate vehicles for lobbying on issues that do not fall within the Schwarz guidelines.
Furthermore, The Florida Bar is a creation of this Court and subject to its supervision. In Schwarz we delineated guidelines by which to determine permissi *1300 ble bar lobbying activities. If a lobbying position does not fall within the guidelines set forth in Schwarz, it is outside the ambit of permissible bar lobbying activities. Thus, a petitioner may enjoin the bar from lobbying on that position. Under the circumstances of this case, where lobbying positions 6.a. through 6.h. neither fall under the five areas which clearly justify bar lobbying activities nor satisfy the three additional criteria by which to determine permissible lobbying activities, we enjoin The Florida Bar from lobbying on those positions henceforth from the date this opinion is final.
We therefore order that The Florida Bar refund Frankel a proportionate share of his bar dues applicable to the impermissible lobbying activities plus interest at the statutory rate from the date he paid those dues and enjoin the bar from the above-mentioned lobbying activities.
It is so ordered.
SHAW, C.J., and OVERTON, GRIMES, KOGAN and HARDING, JJ., concur.
McDONALD, j., concurs specially with an opinion.
BARKETT, J., concurs specially with an opinion, in which SHAW, C.J., and KOGAN, J., concur.

. Any member of The Florida Bar in good standing may question the propriety of any legislative lobbying position taken by the board of governors by filing a timely petition with this Court. The Florida Bar re Schwarz, 552 So.2d 1094 (Fla.1989), cert. denied, — U.S. —, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).

. In The Florida Bar re Schwarz, 526 So.2d 56 (Fla.1988), our first Schwarz decision, we de-dined to dedde whether any existing specific lobbying activity of The Florida Bar was improper. Rather, we referred the matter to the Judicial Council of Florida for its comments and recommendations. We adopted the council’s recommendations as guidelines for determining permissible bar lobbying activity in our second Schwarz decision. Schwarz, 552 So.2d at 1095.

. The Florida Bar, in its response to Frankel's petition, points out that only nine of 45,156 bar members objected to the specific lobbying positions at issue in the case at bar.

. Because The Florida Bar’s lobbying positions fail to satisfy the second additional criterion of Schwarz, we need not address whether its positions satisfy the third additional criterion.

. Pendente lite is defined as "[plending the lawsuit; during the actual progress of a suit; during litigation. Matters 'pendente lite' are contingent on the outcome of litigation.” Blacks’Law Dictionary 1134 (6th ed. 1990). Because The Florida Bar indicated its intent to continue to lobby on the children’s issues Frankel contested, Frankel seeks to enjoin the bar from lobbying on those positions during the pendency of these proceedings. We find that Frankel has failed to make the requisite showing to obtain the injunction pendente lite.

. Keller v. State Bar of California, — U.S. —, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), refused to consider the issue of whether injunctive relief would be an appropriate remedy because the California Supreme Court had not addressed the issue.