771 So.2d 523 (2000)
Harvey M. ALPER, et al., Petitioners,
v.
THE FLORIDA BAR, et al., Respondents.
No. SC00-2004.
Supreme Court of Florida.
October 19, 2000.
Joseph W. Little, Gainesville, Florida, for Petitioners Joseph W. Little and Harvey M. Alper.
Will Murphy of Murphy's Law Firm, P.A., North Miami Beach, Florida, pro se, Petitioner.
Barry Richard of Greenberg Traurig, P.A., Tallahassee, Florida, for Respondents.
PER CURIAM.
Harvey M. Alper, Joseph W. Little, and Will Murphy ("Petitioners"), as members of The Florida Bar, have filed with this Court a petition seeking to enjoin the Board of Governors of The Florida Bar and its agents and representatives ("Bar") from using the Bar's money, resources, and reputation in a campaign that advocates voter approval of two measures on the November 2000 ballot concerning the selection and retention of county and circuit judges in Florida. The ballot measures provide voters in each county and each judicial circuit in Florida the option of having judges chosen through the merit selection and retention process. Petitioners allege that this activity of announcing an official position on the ballot issues violates their rights under the First and Fourteenth Amendments of the United States Constitution, as well as under Article I of the Florida Constitution. Petitioners aver that one way in which the Bar is engaged in impermissible conduct in actively endorsing the merit selection and retention proposals is through the Bar's *524 production and circulation of a uni-fold pamphlet, the front cover of which is emblazoned with the words, "Vote YES for Qualified Judges, Not Politicians."
We have previously denied a petition to enjoin The Florida Bar from engaging in activity very similar to that which is at issue in the instant case. In Florida Bar re Alper, No. 84,615 (Fla. Jan. 30, 1995) (unpublished order) petitioners argued that the Bar's use of compulsory membership dues to fund its campaign that sought to place the issue of merit selection and retention before the state's voters violated their rights to freedom of expression and association under the First and Fourteenth Amendments of the United States Constitution. Just as Petitioners do in the instant case, the petitioners in the 1995 Alper case relied primarily on this Court's opinions in Florida Bar re Schwarz, 552 So.2d 1094 (Fla.1989), and Florida Bar re Frankel, 581 So.2d 1294 (Fla.1991), as support for their request for injunctive relief. We found the argument based on those two cases lacking in merit five years ago and do the same today, with a brief explanation.
In Schwarz we attempted to more clearly define the boundaries within which the Bar may properly operate to engage in informational and issue-directed campaigns. We considered recommendations and comments provided by the Judicial Council, and specifically adopted the recommendation that the Bar be permitted to engage in those activities "relating to the improvement of the functioning of the courts, judicial efficacy and efficiency." Schwarz, 552 So.2d at 1095.[1] We also adopted the Judicial Council's recommendation that the Bar be allowed to become actively involved in supporting positions on issues when the following alternative criteria are satisfied:
(1) That the issue be recognized as being of great public interest;
(2) that lawyers are especially suited by their training and experience to evaluate and explain the issue; and
(3) the subject matter affects the rights of those likely to come into contact with the judicial system.
Id. at 1095.
The Bar argues that its position and activity seeking voter approval of a merit selection and retention system for county and circuit judges meet both the criterion of being "relat[ed] to the improvement of the functioning of the courts, judicial efficacy and efficiency," and also the alternative criteria dealing with an issue of great public interest, as to which lawyers are specially trained to evaluate and explain how that issue can affect the rights of those likely to come into contact with the judicial system. We agree that the Bar's activity is related to the issue regarding the improvement of the court system. We also agree that it falls within the boundaries of the alternative criteria as well. First, the manner in which county and circuit judges are chosen can be an issue of great interest to the citizens of Florida. Second, lawyers have the training and experience to put forth a view on how judicial decision makers should be chosen. Third, the manner of selection for county and circuit judges could certainly affect the rights of the citizens of Florida who appear before those judges regarding matters within the legal system.
We also note that in Schwarz we made specific reference to In re Amendment to Integration Rule of the Florida Bar, 439 So.2d 213, 214 (Fla.1983). In that case, in the context of considering a petition to amend the Integration Rule of the Bar to *525 prohibit the Bar's Board of Governors from "engag[ing] in any political activity on behalf of The Florida Bar [or] expend[ing] any money or employ[ing] personnel for such purpose," we recognized that previously the Bar had "actively sought the amendment to the Florida Constitution providing for merit retention of appellate judges not only in the Legislature but with the citizens of the State," and we specifically said that such activity by the Bar was well within the parameters of appropriate activity. In re Amendment to Integration Rule provides additional support for the denial of the petition in the instant case, because Petitioners have placed at issue essentially the same activity by the Bar that we have previously found to be appropriate. Moreover, In re Amendment to Integration Rule addressed the general issue of whether the Bar's use of compulsory membership dues to support issues that were recognized as being within the Bar's purview nevertheless violated dissenting Bar members' rights to freedom of expression and association. We held that such activity does not violate such rights, because each dissenting Bar member
"is still free to voice his own views on any subject in any manner he wishes. He can do this even though such views be diametrically opposed to the position taken by the unified bar of his state." In re Unification of the New Hampshire Bar, 109 N.H. 260, 266, 248 A.2d 709, 713 (1968). This may take the form of working within The Bar itself or its committees or it may be through external means. But he is never forced to adhere to or proclaim any political view or engage in any personally-repugnant political activity.
In re Amendment to Integration Rule, 439 So.2d at 215.
Petitioners also argue that the Bar's use of compulsory membership dues to fund a campaign seeking support for merit selection and retention of county and circuit judges is contrary to our holding in Florida Bar re Frankel, 581 So.2d 1294 (Fla. 1991). We disagree. In Frankel, we did enjoin the Bar from lobbying on child welfare and family wellness matters, issues that clearly did not fall within the boundaries we had outlined in Schwarz. However, because the Bar's activity and efforts in the instant case fall squarely within the Schwarz boundaries, we find Frankel to be easily distinguishable and petitioners' reliance on it to be misplaced.
In Frankel we also looked at the impact of Keller v. State Bar of California, 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990), on the permissible activities of the Bar. The main import of Keller is in its holding that when membership in a state's bar association is compulsory, requiring every lawyer desiring to practice law in that state to become a member of the bar association and pay mandatory fees, the bar association may use those mandatory fees for lobbying efforts only if they are "germane" to the purposes of regulating the legal profession or of improving the quality of the legal profession. See Keller, 496 U.S. at 13-14, 110 S.Ct. 2228. Frankel determined that there was no appreciable difference between the standard used in Schwarz to approve the permissible boundaries within which the Bar could lobby i.e., improving the administration of justice or advancing the science of jurisprudence and the "germaneness" standard applied in Keller. Thus, we conclude that petitioners' secondary argument that the Bar violated the Keller standard is also unavailing.
Finally, Petitioners claim that the Bar's use of their compulsory membership dues to fund activities which support issues with which they disagree violates their due process rights. In disposing of this claim we note that decisions rendered by this Court and by others have scrupulously considered the due process ramifications of the Bar's use of compulsory membership fees in issue-directed campaigns with which some Bar members disagree. Those decisions have approved the *526 Bar's procedure, under Rule 2-9.3 of the Rules Regulating the Florida Bar, for allowing dissenting members to seek a refund of the relevant percentage of their fees used to fund campaigns with which those members disagree, and have found that it comports with the essential tenets of due process in giving fair notice and affording an opportunity to be heard before an impartial decision maker. See, e.g., Schwarz, 552 So.2d at 1097-98 (noting with approval that rule 2-9.3 gives notice and an opportunity to be heard to dissenting bar members regarding the Bar's lobbying positions); Frankel, 581 So.2d at 1298-99 (noting how rule 2-9.3 comports with due process); Gibson v. Florida Bar, 906 F.2d 624 (11th Cir.1990) (holding that rule 2-9.3 properly considers and protects dissenting bar members' constitutional rights), cert. dismissed, 502 U.S. 104, 112 S.Ct. 633, 116 L.Ed.2d 432 (1991).
Therefore, because we hold that the Bar's activities, as alleged in the petition before us, are clearly within the parameters previously approved by this Court, we hereby deny the petition on the basis that it is facially insufficient for the granting of relief.
It is so ordered.
WELLS, C.J., and HARDING, PARIENTE and QUINCE, JJ., concur.
LEWIS, J., concurs with an opinion, in which PARIENTE, J., concurs.
SHAW and ANSTEAD, JJ., concur in result only.
LEWIS, J., concurring.
While I agree with the majority's decision that the petition seeking injunctive relief should be denied, I also believe that Petitioners' allegations, that the Bar made false statements in the pamphlet it circulated to encourage voter approval of the ballot measures regarding merit selection and retention for county and circuit judges, should be considered in the proper forum. This Court is not the proper forum for testing, examining, or cross-examining the veracity of statements made by the Bar. The proper forum is one that affords proper examination and cross-examination of witnesses and the development of a complete record, which is beyond the capacity of this Court. Because the Rules Regulating the Florida Bar allow referees to be appointed, essentially, only in Bar disciplinary matters, see, e.g., rule 3-7.6 ("The chief justice shall have the power to appoint referees to try disciplinary cases." (emphasis added)), it is incumbent upon this Court to explore the idea of amending the rules to permit, when the necessity arises, the appointment of an impartial fact finder who can operate in a forum within which factual allegations may be tested and a record fully developed. Matters such as some of those asserted in the instant case concerning veracity, in which the Bar's activities in a non-disciplinary matter have been called into question, demonstrate the need for a mechanism in which a referee or other impartial fact finder can be appointed when the need arises.
Petitioners' allegations of false statements in the Bar's campaign pamphlet must be taken seriously because the Bar is an arm of this Court, and this Court cannot condone, even implicitly, statements that are lacking in veracity. Therefore, I encourage exploration of the idea of amending the rules to provide flexibility so that activities of the Bar in non-disciplinary settings which involve allegations of false statements may be scrutinized by an impartial fact finder.
PARIENTE, J., concurs.
NOTES
[1] In Schwarz we also adopted the Judicial Council's recommendations regarding four other areas in which the Bar could use compulsory membership dues to fund lobbying activities: questions concerning the regulation and discipline of attorneys; increasing the availability of legal services to society; regulation of attorneys' client trust accounts; and the education, ethics, competence, integrity, and regulation as a body, of the legal profession. See Schwarz, 552 So.2d at 1095.