LAURA KNOWLES v. MAGIC CITY GROCERY, INC., CLAUDE
SHANEN and ROSELLE SHANEN, *et vir.*

197 So. 843

Division B

Opinion Filed July 12, 1940

Rehearing Denied October 12, 1940

*Boone, Jones & Bailey* and *Whitfield & Whitfield,* for Appellant;

*Keen & Allen, R. P. Terry* and *Feibelman & Jepway,* for Appellees.

PER CURIAM.—Appeal from a final order of the circuit court denying a motion by appellant for final decree notwithstanding the Special Master's report, and dismissing the suit.

Appellant filed creditor's bill in the circuit court, the cause was referred to a Master, and final decree entered in favor of appellant. From that decree an appeal was taken, and in the case of Magic City Grocery, Inc., *et al.,* v. Knowles, 132 Fla. 656, 181 So. 889, the cause was reversed and remanded with leave to amend the bill and to introduce appropriate evidence thereunder.

The bill was amended and a special master was again appointed to take testimony.

It was found that appellant had a good and valid judgment against appellee, Claude Shanen. It was also shown that in 1928, subsequent to the execution of the note by Shanen and his wife to appellant upon which the judgment was based, Shanen organized a corporation called Magic City Grocery, Inc., to which he and his wife transferred all their property, real and personal, in the amount of $29,900, in return for which 48 of the 50 shares of no par value stock were issued to Shanen, and one share to his wife. The other share was issued to H. G. Jones. All this is shown in the minutes of the corporation. Shortly thereafter, Jones transferred his one share to Mrs. Shanen. Shanen had conducted a retail grocery business before the

corporation was formed and the corporation continued to conduct such business in Miami after its organization, with Shanen as the sole manager and in complete control of all the property.

On February 5, 1935, Shanen traded 46 of his shares of stock to the corporation for a house and lot, in which Shanen and his wife are now living and which has been designated as a homestead. It is this transaction which appellant is attempting to have set aside as being fraudulent.

Shanen used the remaining two shares of his stock as collateral for a loan of $1,000 from Nidor. Nidor later advertised the stock for sale and bought it himself. The ownership of all outstanding stock in the corporation is now as follows: Nidor, two shares; Mrs. Shanen, two shares. The stock acquired by the corporation in exchange for the house and lot is now treasury stock and is not outstanding. See Thompson on Corporation (1st ed.), Vol. 7, Sec. 8665.

After the formation of the corporation Shanen continued to manage and control all the business of the corporation, just as he had managed and controlled the grocery store and other property before the corporation's organization.

Appellant's note, on which the judgment is based, was executed long prior to February 5, 1935, and payment of it had many times been demanded. A suit was entered February 6, 1935, to collect the note, such suit resulting in the judgment which is the subject matter of the present controversy.

The special master posed as the primary question to be decided, whether or not the corporation could legally purchase its own capital stock. We must, however, go further than that. Section 6534, C. G. L. provides " * * * that no such corporation shall purchase its own shares of capital

stock except from the surplus of its assets over its liabilities including capital." It is undisputed that the purchase, or trade, of the stock was in contravention of this statute, and appellant urges that being such, the transfer is null and void. Appellees, on the other hand, contend that the act is merely an *ultra vires* act, and is subject to question only by the State.

The special master answered this question in his findings by saying that there is a notable distinction between an *ultra vires* act, which is one merely beyond the powers of the corporation to perform, and an act which is prohibited by law. The former, he said, is subject to question only by the State; the latter is null and void.

Thompson on Corporations states that an act of a corporation is *ultra vires* "when it is outside the objects for which the corporation was created as defined by the laws of its organization and limited by the statutes authorizing its existence. In other words, it is an unauthorized act. In its primary sense, an act is '*ultra vires*' the powers of a corporation when it is wholly outside of the scope of the, purposes for which the corporation was formed or has its being, and which it has no authority to perform under any circumstances or in any mode. In a secondary sense, an act is said to be '*ultra vires*' as it affects the rights of parties without whose consent it may not be done, or when the corporation is not authorized to perform it for the specific purposes or in the particular manner involved, notwithstanding it may come within the scope of its general powers. * * *." Thompson on Corporations (3rd ed.), Vol. 4, Sec. 2825, page 525.

There is ample authority to sustain appellee's contention that the State, or the sovereign power, is the only one who may challenge an *ultra vires* act of a corporation. Where

the act complained of is not one merely outside the authority or scope of the corporation to perform, but in direct violation of a State statute, the authorities are in conflict, this not being strictly an *ultra vires* act. However, in Hitchcolk, *et al.*, v. Mortgage Securities Corporation, 95 Fla. 147, 116 So. 224, it was held that even where the act was in direct contravention of law, the State is the only authority to question the act. There is one notable exception to this rule, which we point out at this time, i. e., where fraud is alleged by a creditor in a suit to set aside or nullify the act alleged to be illegal, or *ultra vires,* as the case may be.

In Thompson on Corporations (2nd ed.) Vol. 3, page 766, it is said that "A rule receiving support from some of the authorities is that a creditor cannot attack a corporate transaction as *ultra vires* merely; he can assail the act only on the ground that its intent or effect is to fraudulently divert the corporate assets from his debt; he must allege fraud." This same rule is laid down by Thompson in his 3rd edition on Corporations, Section 2910, after which he added, "and he must show that he has sustained special damage from the acts complained of."

We must now decide whether or not there was such fraud in the transaction as to allow the creditor, who has shown special damage, to set aside the act. In the amended bill of complaint there was ample allegation of fraud to bring the bill within the general exception. Fraud was specifically alleged in the transaction.

In 24 Am. Jur. 222, Sec. 68, it is stated that:

"A very usual form of fraudulent conveyance consists of the shifting of the assets of a debtor to a corporation frequently formed for that specific purpose, by which means the only assets from which creditors could expect to be paid are placed beyond reach of their process. The courts look

askance at such transactions, whether the debtor is an individual, a partnership, or another corporation, and if the proper elements are present, will subject the property so transferred to the claims of the creditors of the transferrer. The transaction is in substance a transfer by the debtor to himself. However, such a transaction is not conclusive proof of fraud, but is merely a badge of fraud to be considered with the other facts of the case. As tending to a conclusion that the transaction was fraudulent as to creditors, importance attaches to the fact that the debtor's property was transferred to a corporation which was organized, owned, or controlled by the debtor. On the other hand, where the only circumstances indicating an intent to delay or defraud creditors is the fact that the debtor transferred his property to a corporation in consideration of his stock, many courts have refused to declare the transaction to have been fraudulent, upon the theory that the debtor's property is not thereby diminished because the stock takes the place of the property transferred, and that the creditor is not thereby prejudiced since he can attach the stock in satisfaction of his claim."

In Fleming v. Otis Elevator Co., 107 Fla. 557, 145 So. 201, this Court held that the fact that the conveyance made by the debtor included all the debtor's property subject to attachment and execution, and was made to a corporation organized, owned and controlled by the debtor, with the grantor-debtor remaining in management and control of the property, was sufficient, in connection with the other circumstances of the case to justify the decree of the chancellor setting the deed aside as having been made with fraudulent intent.

In the case at bar, the corporation was organized in 1928. While it is true that Shanen owed the note at that time, it has not been shown that under the circumstances there was

such fraud as would vitiate the transfer to the corporation of all the property owned by Shanen and his wife. It appears that the house and lot transferred to Shanen had been the property of Shanen and his wife prior to 1928, when, at the organization of the corporation, it had been deeded to the corporation as part consideration, along with all the other property owned by Shanen and his wife, in return for the shares of stock in the corporation.

Under the circumstances of the transfers of the property from Shanen to the corporation and back to Shanen at times when to make such transfers had a peculiar advantage to Shanen, in that his creditors were thus forestalled in their attempts at collection, we can only conclude that there was present in these transactions that degree of fraud which would allow appellant to successfully challenge the act of the corporation as being *ultra vires,* or in contravention of law.

The transfer of the stock by Shanen to the corporation in return for the property is subject to challenge by appellant, and being in direct contravention of statute, must be set aside.

Appellees question the right of appellant to now attack certain findings of the Master, after having failed to make appropriate exceptions to the finding at the time the report was confirmed. This point will not be decided, inasmuch as the findings of fact necessary to this disposition of the case were in favor of appellant, and if not confirmed by the circuit court, needed no exceptions thereto in order to be questioned in this Court.

There being substantial proof of the material allegations of the amended bill, the final decree of the circuit court is reversed with directions to enter a final decree in accordance with this opinion.

It is so ordered.

WHITFIELD, P. J., BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.

Chief Justice TERRELL not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.