12 So.3d 183 (2009)
LIBERTY COUNSEL, et al., Petitioners,
v.
The FLORIDA BAR BOARD OF GOVERNORS, et al., Respondents.
No. SC09-363.
Supreme Court of Florida.
June 4, 2009.
*184 Mathew Duane Staver, Maitland, Florida, and Mary E. McAlister, Lynchburg, Virginia, for Petitioner.
Barry Scott Richard of Greenberg Traurig, P.A., Tallahassee, Florida, for Respondent.
PARIENTE, J.
The narrow issue before us is whether the Court in the exercise of its supervisory authority over The Florida Bar under article V, section 15, of the Florida Constitution,[1] should enjoin The Florida Bar from permitting a voluntary section of the Bar to file an amicus brief in pending litigation *185 in a district court of appeal.[2] Specifically, the petitioners, Liberty Counsel, a nonprofit public interest law firm based in Maitland, Florida, and two members of The Florida Bar,[3] seek to enjoin The Florida Bar from permitting the Family Law Section to file an amicus brief in the Third District Court of Appeal in support of a trial court ruling that held unconstitutional a law that prohibits homosexuals from adopting children.[4]
The Family Law Section is a voluntary section of the Bar established pursuant to the authority vested in the Bar by Rule 1-4.5 of the Rules Regulating The Florida Bar.[5] After a vote by its Executive Council, the Family Law Section sought approval from the Board of Governors of the Bar to file the amicus brief. The Board of Governors held a meeting at which it unanimously voted to permit the filing of the amicus brief.
The petitioners make three arguments in support of their claim: (1) the Bar violated their First Amendment rights by allowing the Family Law Section to file an amicus brief; (2) the Bar's approval of the filing of the amicus brief constituted an ultra vires act in violation of the Bar's own policies; and (3) the Bar's approval of the filing of the amicus brief places judges who are members of the Family Law Section in the position of violating the canons of judicial ethics.
We conclude that the Bar's actions in permitting the Family Law Section to file an amicus brief do not violate the First Amendment rights of the petitioners because membership in the Family Law Section is voluntary and any such advocacy by a section is not funded with compulsory dues. We further conclude that the actions of the Bar do not constitute an ultra vires act requiring this Court, in the exercise of its supervisory authority over the Bar, to grant an injunction.[6] Accordingly, *186 because we conclude that Liberty Counsel has not met the requirement for injunctive relief that there be a violation of a "clear legal right" to relief, we deny the petition.[7]
At the outset, we explain that this case does not concern the merits of the underlying case, that is, whether section 63.042(3), Florida Statutes (2008), is constitutional. The merits of that controversy are pending in the Third District. This case is also not about whether this Court should grant permission for the Family Law Section to file an amicus brief. Liberty Counsel itself has announced that it is seeking to file an amicus brief in support of the ban against adoptions by homosexuals, and of course nothing prevents other voluntary associations from seeking to file amicus briefs. Pursuant to the applicable Rule of Appellate Procedure, 9.370, an amicus brief may be filed only with "leave of court."[8] In this case, because the case is pending in the Third District, the decision as to whether to grant leave of court to file an amicus brief will be made by that court.[9]
The narrow issue we are asked to decide in this case is one of first impression for this Court because we have never been asked to rule on the authority of voluntary sections of the Bar to seek to file amicus briefs in pending cases, whether there should be limits on that authority, and, if so, whether this Court should act to constrain that authority. In order to answer this issue, we first address Liberty Counsel's First Amendment argument and then address its ultra vires argument.

ANALYSIS

First Amendment
As to Liberty Counsel's claim that the Bar's actions violated its First Amendment rights, we begin with the seminal case of Keller v. State Bar of California, 496 U.S. 1, 110 S.Ct. 2228, 110 L.Ed.2d 1 (1990). In Keller, the United States Supreme Court held that the First Amendment prohibits a state bar in which membership is a mandatory requirement for the practice of law to use its compulsory dues to fund activities that are not germane to the regulation of *187 the legal profession and the quality of legal services for the people of the State. As to the scope of permissible dues-financed activities in which the State Bar could engage, the Supreme Court concluded:
[T]he guiding standard must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of regulating the legal profession or "improving the quality of the legal service available to the people of the State."
....
Precisely where the line falls between those State Bar activities in which the officials and members of the Bar are acting essentially as professional advisers to those ultimately charged with the regulation of the legal profession, on the one hand, and those activities having political or ideological coloration which are not reasonably related to the advancement of such goals, on the other, will not always be easy to discern. But the extreme ends of the spectrum are clear: Compulsory dues may not be expended to endorse or advance a gun control or nuclear weapons freeze initiative; at the other end of the spectrum petitioners have no valid constitutional objection to their compulsory dues being spent for activities connected with disciplining members of the Bar or proposing ethical codes for the profession.
Id. at 14-16, 110 S.Ct. 2228.
Following Keller, this Court established standards for expenditures by The Florida Bar on ideological or political activity as well as approved limitations on permissible areas for lobbying by the Bar. In Florida Bar re Schwarz, 552 So.2d 1094 (Fla.1989), the Court adopted the Judicial Council of Florida's recommendation that the following areas clearly justify bar lobbying activities:
(1) Questions concerning the regulation and discipline of attorneys;
(2) matters relating to the improvement of the functioning of the courts, judicial efficacy and efficiency;
(3) increasing the availability of legal services to society;
(4) regulation of attorneys' client trust accounts; and
(5) the education, ethics, competence, integrity and regulation as a body, of the legal profession.
Id. at 1095 (quoting Judicial Council of Florida, Special Report to the Supreme Court of Florida on Legislative Activities of The Florida Bar 9 (1988)). The Court also adopted the Council's recommendation that the following additional criteria be used to determine permissible bar lobbying activities when the legislation falls outside of the above specifically identified areas:
(1) That the issue be recognized as being of great public interest;
(2) that lawyers are especially suited by their training and experience to evaluate and explain the issue; and
(3) the subject matter affects the rights of those likely to come into contact with the judicial system.
Id. (quoting Judicial Council of Florida, supra, at 9-10). The Court went on to state: "[W]e also suggest that the Board exercise caution in the selection of subjects upon which to take a legislative position so as to avoid, to the extent possible, those issues which carry the potential of deep philosophical or emotional division among the membership of the Bar." Id. at 1097. However, the Court did not incorporate that cautionary note into the guidelines we adopted.
Following Schwarz, this Court has entertained challenges to the scope of the Bar's activities in the exercise of its supervisory *188 authority over the Bar itself as opposed to voluntary sections. Specifically, in Florida Bar re Frankel, 581 So.2d 1294 (Fla.1991), the Court considered a challenge to the Board of Governors' adoption of the lobbying positions of the Bar's Commission for Children.[10] In that case, the Bar claimed that its involvement in children's matters clearly justified advocacy of the contested positions due to their relationship to the ethics and integrity of the legal profession. Id. at 1296. The Bar also stated that its moral obligation to Florida's children verified the suitability by training and experience within the legal profession to evaluate and explain the contested lobbying positions. Id. at 1298. This Court noted that the Bar carries the burden of proof in establishing the propriety of its lobbying activities and rejected the Bar's position. Id. at 1296. The Court concluded that the Board of Governors' adoption of the lobbying positions of the Bar's Commission for Children was impermissible under Schwarz and Keller. Id. at 1298. In response to the Bar's argument that only nine of its members objected to the issues, this Court stated that the "merit of the position or the unanimity in its support is not the standard by which to determine the propriety of bar lobbying activities on that position." Id.
Because the Bar's lobbying positions did not fall within the Schwarz guidelines, they were deemed outside the scope of permissible lobbying activities. Id. By contrast, the Court has concluded that the Bar's lobbying activities in support of ballot measures related to judicial selection and retention did fall within the Schwarz guidelines. See Alper v. Fla. Bar, 771 So.2d 523, 526 (Fla.2000). Unlike the positions taken on child welfare and family health in Frankel, the Bar's positions on judicial selection and retention in Alper met the criterion of being related to the improvement of the functioning of the courts, judicial efficacy and efficiency, and the alternative criteria of dealing with an issue of great public interest, which lawyers are specially trained to evaluate and which can affect the rights of those likely to come into contact with the judicial system. Id. at 524.
Liberty Counsel's First Amendment argument under Keller focuses on the use of compulsory dues in approving the filing of and in the filing of the amicus brief by the Family Law Section. However, we conclude that the filing of the amicus brief by the Family Law Section does not implicate Liberty Counsel's First Amendment rights as defined in Keller because membership in and payment of dues to a section is voluntary and any such advocacy by a section is not funded with compulsory dues.[11]
*189 Liberty Counsel also counters the Bar's argument that section membership and dues are voluntary by arguing that the sections are nevertheless creations of the Bar. We agree that under rule 1-4.5, sections are "an integral part of The Florida Bar" and have the duty to "work in cooperation with the board of governors and under its supervision toward accomplishment of the aims and purposes of The Florida Bar and of that section or division." R. Regulating Fla. Bar 2-7.2. Nevertheless, the standards and restrictions adopted by this Court subsequent to Keller address only the activities of the Bar and not the activities of the voluntary sections of the Bar.
In fact, this Court has previously concluded that voluntary sections are not bound by the Keller and Schwarz requirements. In Frankel, this Court discussed how Keller analogized a mandatory state bar association to a compulsory union in reaching its decision and explained:
Within the context of a union-shop agreement, the Court previously has held that an injunction prohibiting a union from expending mandatory dues for political purposes would be inappropriate because nondissenting union members have an interest in stating their views "without being silenced by the dissenters." International Association of Machinists v. Street, 367 U.S. 740, 773, 81 S.Ct. 1784, 1802, 6 L.Ed.2d 1141 (1961); see Abood [v. Detroit Bd. of Educ., 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)].
We find that the concern expressed in Street is inapplicable with regard to The Florida Bar. An injunction prohibiting the bar from lobbying on a particular issue would not silence the voices of nondissenting members. The bar has many volunteer sections and political action committees through which bar members may assert their views. See In re Amendment to Integration Rule; Schwarz, (McDonald, J. dissenting). Indeed, these volunteer sections and committees are the appropriate vehicles for lobbying on issues that do not fall within the Schwarz guidelines.

Frankel, 581 So.2d at 1299 (emphasis supplied). As Justice Barkett stated in her specially concurring opinion in Frankel:
I am compelled to agree that The Florida Bar's lobbying efforts in this instance will not fit within the criteria of The Florida Bar re Schwarz, 552 So.2d 1094 (Fla.1989), cert. denied 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990), though I confess, like Cinderella's sisters, I have tried mightily to force the foot into the glass slipper. I am hopeful that the voluntary bar associations and the various sections of the Bar will take up the slack.

Frankel, 581 So.2d at 1300 (Barkett, J., specially concurring) (emphasis supplied).
Accordingly, we conclude that the decision by the Bar to authorize the Family Law Section to file an amicus brief does not violate the First Amendment rights of the petitioners, who disagree with the legal position taken.

Ultra Vires Action
Liberty Counsel further contends that the Bar committed an ultra vires act in approving the filing of the amicus brief because it violated its own standing board policies in doing so. It does not otherwise argue that the Bar lacks the authority to allow a voluntary section leave to file an amicus brief.
*190 The Bar adopts standing board policies, which are not subject to this Court's approval, that govern its internal administration and operation. As explained in bylaw 2-9.2 of the Rules Regulating the Florida Bar:
The board of governors shall adopt standing board policies governing the internal administration and operation of The Florida Bar and the board of governors. The board of governors may adopt, amend, or rescind standing board policies by a majority vote of the membership of the board of governors provided any amendment to any standing board policy shall not be effective until 30 days after adoption. Such standing board policies may be adopted, rescinded, or amended by a majority vote of those present at any regular meeting of the board of governors provided advance written notice is given to the members of the board of governors of the proposed adoption, repeal, or amendment of any standing board policy. The provision of any standing board policy may be waived by a two-thirds vote of those present at any regular meeting of the board of governors.
Standing Board Policy 8.10 governs amicus curiae filings by sections of the Bar. Sections 8.10(a)(1) and (a)(3) provide:
(1) A section of The Florida Bar may adopt a position and submit an amicus curiae brief in pending litigation only when the issue is beyond the scope of permissible legislative or ideological activity of The Florida Bar, or the issue is within the permissible legislative or ideological activity of the bar and the proposed brief does not take a position that is inconsistent with an official position of the bar and the requirements of subdivision (3) are met.
(3) Divisions, sections and committees may not adopt a position or submit an amicus curiae brief in pending litigation unless the issue involved is within the area of subject matter interest of the division, section or committee as described in its bylaws or official charge, and the issue is not one that carries the potential of deep philosophical or emotional division among a substantial segment of the membership of the bar.
Specifically, Liberty Counsel argues that the Bar violated section (a)(3). Liberty Counsel asserts that by determining that the issue of adoption by homosexuals is "not one that carries the potential of deep philosophical or emotional division among a substantial segment of the membership of the bar," the Bar violated section 8.10(a)(3)the violation of which constitutes an ultra vires act.[12]
In deciding that the actions of the Bar do not constitute an ultra vires act such that the Liberty Counsel has established a clear legal right, we make the following observations. First, we reiterate that our prior case law has imposed restrictions on the activities of the Bar, but none of our prior cases have involved restrictions on the activities of the voluntary sections of the Bar. Although we suggested in Schwarz, "that the Board exercise caution in the selection of subjects upon which to take a legislative position so as to avoid, to the extent possible, those issues which carry *191 the potential of deep philosophical or emotional division among the membership of the Bar," 552 So.2d at 1097, we envisioned in Frankel that it would be the sections that would be "the appropriate vehicles for lobbying on issues that do not fall within the Schwarz guidelines." Frankel, 581 So.2d at 1299. In fact, Standing Board Policy 8.10(a)(1) recognizes this balance between the role of the Bar and the role of the sections regarding both the scope of lobbying positions and the subject of the amicus briefs. Specifically, section 8.10(a)(1) authorizes a section of the Bar to "submit an amicus brief in pending litigation only when the issue is beyond the scope of permissible legislative or ideological activity of the Florida Bar." (emphasis added).
Second, as explained previously, the decision whether to allow an entity to file an amicus brief is ordinarily a decision made by the court in which permission is sought rather than a decision for this Court, in the exercise of our supervisory authority over the Bar. Third, we are presented with the Bar's standing policy related to amicus briefs, which is a standing policy that we have never approved or disapproved, which requires that the amicus brief not be submitted on an issue which "carries the potential of deep philosophical or emotional division among a substantial segment of the membership of the bar."[13]
With these three observations in mind, we consider the Bar's argument that we should deny injunctive relief in this case on the ground that the "Board of Governors, which is comprised of the elected representatives of the entire membership, is in the best position to determine whether a particular issue is highly divisive within the membership as a whole." We agree that the Board's decision regarding whether a voluntary section should be able to file an amicus brief is entitled to deference. We also conclude that the Court will not interfere with or micromanage the activities of the Bar's sections, or the approval of those activities by the Bar, unless the Bar's actions regarding the scope of the activities of its voluntary sections are clearly outside the Bar's authority.
Black's Law Dictionary defines an "ultra vires" act as one that is "unauthorized; beyond the scope of power allowed or granted by a corporate charter or by law." See Black's Law Dictionary 1559 (8th ed.2004). Although there is no case from this Court discussing the concept of "ultra vires" actions from the standpoint of the activities of the Bar or its sections, a 1940 case from this Court discussed the concept in terms of a corporation:
Thompson on Corporations states that an act of a corporation is ultra vires "when it is outside the objects for which the corporation was created as defined by the laws of its organization and limited by the statutes authorizing its existence. In other words, it is an unauthorized act. In its primary sense, an act is `ultra vires' the powers of a corporation when it is wholly outside of the scope of the purposes for which the corporation was formed or has its being, and which it has no authority to perform under any circumstances or in any mode."
Knowles v. Magic City Grocery, 144 Fla. 78, 197 So. 843, 844 (1940). Further, Florida courts have held that a municipality, county, or town engages in an "ultra vires" act when it lacks the authority to take the action under statute or its own governing *192 laws. See, e.g., Lykes Bros., Inc. v. City of Plant City, 354 So.2d 878, 880 (Fla.1978) ("As to whether a city's tax exoneration contract is valid, our decisions uniformly hold that municipal contracts promising not to impose taxes, or granting tax exemptions, are ultra vires and void in the absence of specific legislative authority."); Town of Lauderdale-by-the-Sea v. Meretsky, 773 So.2d 1245, 1249 (Fla. 4th DCA 2000) ("[T]he Town Commission authorized an act contrary to its own ordinances and, therefore, its approval was ultra vires and void.").
The Bar's approval of the filing of an amicus brief by the Family Law Section in the Third District was not an ultra vires act because in doing so, the Bar did not act contrary to any of its rules or policies, or rules promulgated by this Court. With regard to whether noncompliance with one of the Bar's own standing policies can constitute an ultra vires act requiring this Court to intervene by issuance of an injunction, we reject the argument that the approval of the filing of an amicus brief by a voluntary section is ultra vires.
Our support for this view is buttressed by the fact that the Bar can waive any of its standing policies by a vote of two-thirds of the Board of Governors. See R. Regulating Fla. Bar 2-9.2 ("The provision of any standing board policy may be waived by a two-thirds vote of those present at any regular meeting of the board of governors."). Implicit in the Board's unanimous vote to approve the filing of the amicus brief is the notion that the Board waived by a two-thirds vote the requirement that it determine the divisiveness of the issue.
Because the requirements of the standing board policies regarding the filing of amicus briefs by sections can be waived by the Board, the unanimous approval by the Board did not constitute an ultra vires action. And because there are no other legal or constitutional prohibitions against the actions of the Family Law Section, we cannot conclude that the actions of the Bar were unauthorized. We thus decline to reach a decision whether, under these circumstances, the Board reached the correct or incorrect conclusion on the divisiveness of the subject matter of the amicus brief supporting the trial court's decision on the constitutionality of the legislative prohibition against adoption by homosexuals.
For all of the above reasons, we conclude that Liberty Counsel has not established a violation of a clear legal right and therefore deny Liberty Counsel's request for injunctive relief.
It is so ordered.
QUINCE, C.J., and LEWIS, LABARGA, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY, J., concurs.
POLSTON, J., dissenting.
The Bar failed to comply with its policies, or waive them in the manner prescribed by its bylaws, when it approved the Family Law Section's request to file an amicus brief on homosexual adoption. Should The Florida Bar follow its own rules? The majority concludes that this decision is up to the Bar. See majority op. at 192. Because I agree with Liberty Counsel that this Court should require the Bar to comply with its own rules, I respectfully dissent.[14]

I. Failure to Properly Approve Amicus Brief on Divisive Issue
The Florida Bar's Standing Board Policy 8.10(a)(3) provides that sections of the *193 Bar may not submit an amicus brief in pending litigation if the issue involved "carries the potential of deep philosophical or emotional division among a substantial segment of the membership of the bar." The issue of homosexual adoption is undeniably divisive. The Florida Bar does not argue otherwise. The majority opinion does not hold otherwise.
The Bar has consistently recognized the divisive nature of homosexual adoption in the past. In 2004, the Bar rejected the Family Law Section's request to lobby for the repeal of Florida's law specifically because it determined that the issue of homosexual adoption had the potential of creating a deep philosophical and emotional divide among members of the Florida Bar. See Alan B. Bookman, Our Legislative Role, Fla. B.J., Feb. 2006, at 8. Then, in 2005, the Bar again recognized the divisiveness of the issue when it denied the Family Law Section's request to lobby that some homosexual parents be permitted to adopt. See Jan Pudlow, Family Law Section to File Gay Adoption Case Amicus, The Florida Bar News, Feb. 15, 2009.
In this case, based upon the meeting minutes from January 30, 2009, it is not at all clear that The Florida Bar made any determination regarding divisiveness or even that it recognized that Standing Board Policy 8.10(a)(3) required it to do so. The meeting minutes simply state:
The board voted to not disallow the Family Law Section filing an amicus brief with the Third District Court of Appeal in the case, In the Matter of the Adoption of John Doe and James Doe, supporting the ruling of the trial court judge in that case. The judge ruled F.S. § 63.042(3) unconstitutional and allowed homosexual foster parents to adopt two brothers they had raised for four years. The Board of Governors' action does not constitute The Florida Bar's formal endorsement of the section's position. It acknowledges the subject matter is within the purview of the section's area of expertise and permits the sectioncomposed of and funded entirely by voluntary membersto go forward. No Bar membership fees will be expended to advocate the brief put forth by the section and the amicus will be written by a volunteer. Board member Larry Ringers recused himself from the vote.
The Florida Bar Board of Governors, Regular Minutes (Jan. 30, 2009), at 5-6. These meeting minutes do not mention whether the Bar determined the divisiveness of homosexual adoption as its policy required.
The only indication of any discussion by the Board of Governors comes from a Florida Bar News article cited by Liberty Counsel. See Pudlow, supra. The article indicates that some members of the Board of Governors considered the merits of homosexual adoption, not the divisiveness of the issue. For instance, one board member is reported as having been moved by the Holocaust and the movie, Judgment at Nuremburg, where the leaders did not do the right thing. Id. at 1. This board member is quoted as saying, "[W]e are the leaders of the Bar" and "I think we should send a message to Floridians that we are here to uphold the law, and we are here to do the right thing." Id. Another board member is quoted as saying, "To consider children are being prohibited from having the right to be adopted by appropriate and very caring individuals is completely wrong, and we should not let that go forth." Id. These comments, indicating support for the merits of the proposed amicus position, do not address the divisiveness issue at all and are contrary to the Board's minutes indicating there was no endorsement.
*194 Even though the issue is divisive, the Board of Governors could have voted to waive the application of its Standing Board Policy 8.10(a)(3) with a two-thirds vote, pursuant to its bylaws.[15] Yet it did not do so. Specifically, Bylaw 2-9.2 provides:
The board of governors shall adopt standing board policies governing the internal administration and operation of The Florida Bar and the board of governors. The board of governors may adopt, amend, or rescind standing board policies by a majority vote of the membership of the board of governors provided any amendment to any standing board policy shall not be effective until 30 days after adoption. Such standing board policies may be adopted, rescinded, or amended by a majority vote of those present at any regular meeting of the board of governors provided advance written notice is given to the members of the board of governors of the proposed adoption, repeal, or amendment of any standing board policy. The provision of any standing board policy may be waived by a two-thirds vote of those present at any regular meeting of the board of governors.

R. Regulating Fla. Bar, Bylaw 2-9.2 (emphasis added).
Voting to waive the standing board policy is the only method by which the Bar may take contrary action, as approved by this Court. See Fla. Bar re Rules Regulating the Fla. Bar, 494 So.2d 977, 992-93 (Fla.1986) (adopting Bylaw 2-9.2); see also R. Regulating Fla. Bar 1-11.2, 1-11.3 (explaining that this Court reviews objections to proposed bylaws and may amend bylaws adopted by the Bar at any time). This Court is not micromanaging the affairs of the Bar by requiring it to comply with the bylaws approved by this Court.
There are no provisions for an implicit waiver in any applicable standing board policy provisions or bylaws of the Bar. However, the majority holds that the unanimous vote by the Board implicitly waived the Bar's standing board policy. See majority op. at 192. Contrary to the majority's holding, Bylaw 2-9.2 expressly requires a two-thirds vote to waive such policies. And because Bylaw 2-9.2 expressly requires a waiver by a two-thirds vote, a two-thirds vote is the only possible method of waiving standing board policies. See Bush v. Holmes, 919 So.2d 392, 407 (Fla.2006) (defining the principle of construction "expressio unius est exclusio alterius," or "the expression of one thing implies the exclusion of another," by explaining that when the manner of doing an act is prescribed, "the manner prescribed is exclusive"). Therefore, the Board's unanimous approval of the Family Law Section's amicus brief does not constitute a legally recognizable waiver of Standing Board Policy 8.10(a)(3).
Significantly, the Bar must comply with Robert's Rules of Order when conducting its meetings, which do not permit an implicit waiver. See R. Regulating Fla. Bar, Bylaw 2-9.6 ("The current edition of Robert's Rules of Order shall be the rules that govern the conduct of all meetings of The Florida Bar, its board of governors, its *195 sections, divisions, and committees."). Robert's Rules states that rules contained in an organization's bylaws "cannot be suspendedno matter how large the vote in favor of doing so or how inconvenient the rule in question may beunless the particular rule specifically provides for its own suspension, or unless the rule properly is in the nature of a rule of order." Henry M. Robert III et al., Robert's Rules of Order Newly Revised § 25, at 254 (10th ed.2000). The Bar's Bylaw 2-9.2, which provides for the waiver of standing board policies by a two-thirds vote, does not specifically provide for the suspension of Bylaw 2-9.2 itself and is not a rule of order. As a result, the particular manner for waiving standing board policies prescribed by Bylaw 2-9.2 cannot be suspended "no matter how large the vote in favor of doing so or how inconvenient the rule in question may be." Id; see also id. § 25, at 257-58 (explaining that suspending a rule by unanimous consent, rather than by making a formal motion to suspend the rules, is accomplished prospectively by asking for unanimous consent and then asking if anyone objects).
Therefore, under Robert's Rules of Order, a unanimous vote does not retroactively cure the Bar's failure to comply with Standing Board Policy 8.10(a)(3) or waive the policy in the manner prescribed by Bylaw 2-9.2. The majority's holding that there was an implicit waiver of Standing Board Policy 8.10(a)(3) is contrary to the Bar's specific bylaws regarding how a waiver may be obtained.

II. This Court Has a Duty to Supervise The Florida Bar
The Florida Bar is "an official arm of the court." R. Regulating Fla. Bar, ch. 1, Intro. Indeed, the Board's actions are "subject always to the direction and supervision of the Supreme Court of Florida." R. Regulating Fla. Bar 1-4.2(a). Therefore, as the administrative head of the Bar, this Court not only has the authority, but the duty, to require the Bar to follow its own bylaws and policies.
Every day, the Bar holds attorneys accountable for their actions in compliance with the rules of The Florida Bar. See generally R. Regulating Fla. Bar 3-3.1 (designating the Bar as an agency of this Court for the purpose of enforcing the rules of conduct for attorneys). When these rules are not complied with, there are disciplinary consequences to the lawyers. See R. Regulating Fla. Bar 3-5.1 (listing the disciplinary consequences to lawyers who are found guilty of violating the rules). It is not too much to ask for the Bar to comply with its own requirements when we expect lawyers to comply with the requirements of the Bar. See R. Regulating Fla. Bar 1-11.1 (explaining that the Bar's bylaws "govern the method and manner by which the requirements" of the Bar's rules are met).
The majority concludes that this Court should not require the Bar to comply with its own policies and bylaws because the Bar has the authority to act in regards to sections and, therefore, its actions are not ultra vires. See majority op. 191-92. I do not agree with this conclusion or the particular use of the terms "authority" and "ultra vires" that the majority employs to arrive at its conclusion.
"Authority" is defined as "[t]he power to command, enforce laws, exact obedience, determine, or judge." American Heritage Dictionary 142 (2d coll. ed.1991). And, as the majority notes, "ultra vires" is defined as "unauthorized; beyond the scope of power allowed or granted by a corporate charter or by law." Majority op. at 191 (quoting Black's Law Dictionary 1559 (8th ed.2004)). However, the majority's use of these terms does not acknowledge that certain requirements, such as compliance *196 with rules, must be met for the exercise of authority to be legal and proper. For instance, a police officer has the authority to conduct searches but not before fulfilling the procedural requirement of obtaining a valid warrant. See generally Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); see also Word of Life Ministry, Inc. v. Miller, 778 So.2d 360, 363 & n. 3 (Fla. 1st DCA 2001) ("Even if those voting on May 24, 1978, had been authorized to elect directors, the elections were void for failure to observe restrictions imposed by the articles of incorporation which required directors to be members of the corporation;" electing individuals as directors did not confer membership because of specific bylaw procedural requirements for membership). Therefore, unlike the majority, I conclude that the Bar only has the authority to approve a section's amicus brief when, in doing so, the Board complies with all applicable bylaws and standing board policies.[16]
In particular, I respectfully disagree with the majority's statement that "the Court will not interfere with or micromanage the activities of the Bar's sections, or the approval of those activities by the Bar, unless the Bar's actions regarding the scope of the activities of its voluntary sections are clearly outside the Bar's authority." Majority op. at 191. This statement is overly broad because there is nothing outside the Bar's authority, as the majority uses the term "authority," when it comes to the activities of the sections. Sections are created or abolished by the Bar's Board "as deemed necessary or desirable." R. Regulating Fla. Bar, Bylaw 2-7.3. The sections' bylaws, which define the scope and purpose of the sections, are approved by the Board. R. Regulating Fla. Bar, Bylaw 2-7.1. And the sections, which are integral parts of the Florida Bar, must work under the Board's supervision to accomplish their goals and purposes. R. Regulating Fla. Bar, Bylaw 2-7.2. But the majority's statement indicates that this Court will never act to supervise the Bar in its actions relating to sections.
As the administrative head of the Florida Bar, we simply cannot abdicate our duty to supervise the Bar. See art. V, § 15, Fla. Const. ("The supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted."); Askew v. Cross Key Waterways, 372 So.2d 913, 920-21 (1979) (explaining that the nondelegation doctrine prohibits the delegation of constitutional functions to others).

III. Conclusion
Because the Bar failed to comply with or waive its Standing Board Policy 8.10(a)(3), and this Court has the duty to supervise the Bar, I would grant Liberty Counsel's request for injunctive relief without prejudice to the requisite vote on whether to waive the standing board policy. Accordingly, I respectfully dissent.
CANADY, J., concurs.
NOTES
[1] Article V, section 15, provides that "[t]he supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted."
[2] Although the parties refer to the actions of the Bar as granting permission to the voluntary section to file an amicus brief, as explained more fully herein, the decision whether to allow the filing of the amicus brief is one within the discretion of the appellate court hearing the appealin this case the Third District Court of Appeal. See Fla. R.App. P. 9.370.
[3] These members are Anita Staver, President of Liberty Counsel and a member in good standing of The Florida Bar, and Scott Dixon, an affiliate attorney with Liberty Counsel and a member in good standing of The Florida Bar. Petitioners are collectively referred to as "Liberty Counsel."
[4] The petition specifically seeks permanent or temporary injunctive relief or other extraordinary relief against respondents, The Florida Bar Board of Governors, the President of The Florida Bar, John White, III, and the Executive Director of The Florida Bar, John Harkness, Jr. (collectively referred to as "the Bar").
[5] Rule 1-4.5, titled "Sections," provides:

The board of governors may create and abolish sections as it may consider necessary or desirable to accomplish the purposes and serve the interests of The Florida Bar and of the sections and shall prescribe the powers and duties of such sections. The bylaws of any section shall be subject to approval of the board of governors.
[6] We reject, without detailed discussion, petitioners' claim that the filing of an amicus brief by the Family Law Section will cause judges who are members of the section to be in violation of the Code of Judicial Conduct because the filing of the brief will express a political or ideological view. Even assuming the filing of a legal brief discussing the relevant case law on a legal issue is analogous to a political or ideological position, a view with which we do not agree, nothing in this Court's case law or in the Code of Judicial Conduct prohibits judges from belonging to associations because the associations endorse a particular political or ideological position as a result of a decision in which the judge took no part. If that were the case, judges would be prohibited from being members of a variety of voluntary professional associations, including the American Bar Association and the National Bar Association, and from participating in the valuable nonpolitical activities of bar sections.
[7] To obtain a temporary injunction, the petitioner must satisfy a four-part test under Florida law: "a substantial likelihood of success on the merits; lack of an adequate remedy at law; irreparable harm absent the entry of an injunction; and that injunctive relief will serve the public interest." Reform Party of Fla. v. Black, 885 So.2d 303, 305 (Fla.2004) (citing Dania Jai Alai Int'l, Inc. v. Murua, 375 So.2d 57, 58 (Fla. 4th DCA 1979)). To obtain a permanent injunction, the petitioner must "establish a clear legal right, an inadequate remedy at law and that irreparable harm will arise absent injunctive relief." K.W. Brown & Co. v. McCutchen, 819 So.2d 977, 979 (Fla. 4th DCA 2002) (citing Murua, 375 So.2d at 58).
[8] Pursuant to rule 9.370(a), a "motion for leave to file must state the movant's interest, the particular issue to be addressed" and "how the movant can assist the court in the disposition of the case." Fla. R.App. P. 9.370(a) (emphasis added).
[9] In an article titled Amicus Briefs: Friend or Foe of Florida Courts?, Sylvia H. Walbolt and Joseph H. Lang, Jr., explained: "Amicus briefs are supposed to assist the court in resolving cases of general public interest or aid in resolving difficult issues that have an impact beyond the parties to the litigation. They `should not be used to simply give one side more exposure than the rules contemplate.'" Sylvia H. Walbolt & Joseph H. Lang, Jr., Amicus Briefs: Friend or Foe of Florida Courts?, 32 Stetson L.Rev. 269, 296-97 (2003) (footnote omitted) (quoting Ciba-Geigy Ltd. v. Fish Peddler, Inc., 683 So.2d 522, 523 (Fla. 4th DCA 1996)).
[10] The lobbying positions concerned the following: expansion of the program for women, infants, and children; extension of Medicaid coverage for pregnant women; full immunization for children; establishing children's services councils; family life and sex education/teen pregnancy; increasing aid to families with dependent children; enhanced child-care funding and standards; and creation of a children's needs consensus estimating conference.
[11] Liberty Counsel argues that the Bar "uses dues to pay for support staff for the sections." However, the Board of Governors maintains that "the Bar does provide some administrative services to the sections, for which the sections compensate the Bar in an amount sufficient to cover any services related to activities that would be beyond the bounds of permissible Bar activity." This assertion is supported by Standing Board Policy 5.63, titled "Administrative Support Policy," which shows that the sections are charged an administrative support cost per section member annually to reimburse the Bar for administrative expenses. The Family Law Section has informed the Bar that the brief at issue will be written by non-Bar counsel on a pro bono basis, so it would appear that any expenditure of Bar funds would be de minimis and not amount to the sort of dues-financed activity that raised the First Amendment concerns set forth in Keller.
[12] Liberty Counsel does not challenge the Bar's determination concerning the requirements of Standing Board Policy 8.10(a)(1) and (a)(3) that the issue be "beyond the scope of permissible legislative or ideological activity of the Florida Bar," that the brief "not take a position that is inconsistent with an official position of the bar," and that the area is "within the "subject matter interest" of the section. The requirements of Standing Board Policy 9.50(a), which applies to general political and legislative activity by sections, mirror those of Standing Board Policy 8.10(a).
[13] We do not address in this opinion the potential inconsistency between this internal limitation on the activities of voluntary sections through the Bar's standing policies and the recognition in both Schwarz and Frankel that the voluntary sections should take on issues, within the area of their expertise, which the Bar itself cannot address.
[14] I agree with the majority that Liberty Counsel has not met the requirements for injunctive relief regarding its First Amendment and Code of Judicial Conduct claims.
[15] In footnote 13, the majority notes a potential inconsistency between the Bar's standing board policies regarding voluntary sections and this Court's decisions. See majority op. at 191, n. 13. I do not see an inconsistency. The Bar's policies do not include an absolute prohibition against sections performing activities on divisive issues, but the procedural requirement for a waiver must be followed. See R. Regulating Fla. Bar, Bylaw 2-9.2 (authorizing a waiver of standing board policies by a two-thirds vote). There are very good reasons why the Bar may wish to retain its current policies, but I agree with the majority that this issue is not before us.
[16] Additionally, it appears the majority misconstrues Liberty Counsel's argument when the majority states that "the decision whether to allow an entity to file an amicus brief is ordinarily a decision made by the court in which permission is sought rather than a decision for this Court, in the exercise of our supervisory authority over the Bar." Majority op. at 191. Liberty Counsel does not argue that this Court should decide whether the Third District Court of Appeal should grant the Family Law Section's motion to file an amicus brief. Instead, Liberty Counsel argues that this Court should not allow the Bar to approve the Family Law Section's filing of an amicus brief in the Third District without first complying with its own bylaws and standing board policies.