CANADY, J.,
dissenting.
Because I conclude that there is no basis for this Court to exercise jurisdiction, I would discharge this case. Contrary to the view adopted by the majority, the decision of the First District in State v. Gainesville Woman Care, LLC, 187 So.3d 279 (Fla. 1st DCA 2016), does not expressly and directly conflict with North Florida Women’s Health & Counseling Services, Inc. v. State, 866 So.2d 612 (Fla. 2003), or In re T.W., 551 So.2d 1186 (Fla. 1989). In view of the majority’s decision on jurisdiction, I write to explain why the First District’s decision should be affirmed on procedural grounds. I also write to explain why the majority’s resolution of the substantive constitutional issue misapprehends our precedent.
I.
Nothing in North Florida Women’s or T.W. supports the majority’s jurisdictional claim. The majority asserts that the First District misapplied North Florida Women’s and T.W. “regarding strict scrutiny review of statutes that infringe on the right of privacy.” Majority op. at 1245 n.l. But the First District did not make any conclusions regarding the standard of judicial review applicable to statutes that infringe on the right of privacy. Instead, the First District addressed the conditions that must be met by a party seeking preliminary injunctive relief as well as the requirements applicable to orders granting such relief and ruled that the trial court’s injunction order was both factually and legally deficient. The First District did so without determining the standard of judicial review or reaching the merits on the underlying constitutional challenge.
*1266 Ignoring what the First District’s opinion actually says, the majority claims that the First District “misapplied and misconstrued our precedent by placing the initial evidentiary burden on Petitioners to prove a ‘significant restriction’ on Florida’s constitutional right of privacy before subjecting the Mandatory Delay Law to strict scrutiny.” Majority op. at 1245. The majority thus moves seamlessly from a misconstruction of the First District’s opinion to a misconstruction of our precedents.
This Court only applies strict scrutiny review to a statute regulating the right to abortion if the statute imposes a “significant restriction” on the right to abortion. In T.W. we “held that (a) if a legislative act imposes a significant restriction on a woman’s (or minor’s) right to seek an abortion, the act must further a compelling State interest through the least intrusive means.” North Florida Women’s, 866 So.2d at 621 (emphasis added). Subsequently, in North Florida Women’s we “focus[ed] on two key questions addressed by the [trial] court. (1) Does the Parental Notice Act impose a significant restriction on a minor’s right of privacy? And if so, (2) does the Act further a compelling State interest through the least intrusive means?” Id. at 631 (emphasis added). Indeed, even the majority appears to acknowledge that the Court in T.W. required that there be a significant restriction imposed on the right to abortion before applying strict scrutiny. See Majority op. at 1253-54. In contrast, if the statute imposes an “insignificant burden” on the light to abortion, this Court applies—at most—intermediate scrutiny. See T.W., 551 So.2d at 1193 (explaining that “[finsignificant burdens” on the right to abortion “must substantially further important state interests”). Therefore, the First District’s statement that “[t]he trial court’s failure to make sufficient factually-supported findings about whether the law imposes a significant restriction ... renders the trial court’s sparse legal analysis and conclusions unsupportable and the injunction deficient, and hampers meaningful appellate review,” Gainesville Woman Care, 187 So.3d at 282, is not inconsistent with and does not misapply North Florida Women’s or T.W.
The majority claims that the First District “misinterpreted and misconstrued our precedent concerning the right of privacy by requiring, on remand, that the trial court consider a list of speculative state interests, none of which this Court has ever recognized as compelling.” Majority op. at 1246. But the First District simply stated that “[t]he trial court’s failure to make sufficient factually-supported findings ... about the State’s [asserted] compelling interests[ ] renders the trial court’s sparse legal analysis and conclusions unsupportable and the injunction deficient, and hampers meaningful appellate review.” Gainesville Woman Care, 187 So.3d at 282. The majority fails to explain how the First District “misinterpreted and misconstrued our precedent,” majority op. at 1246, by requiring the trial court to address on remand the interests alleged by the State. The majority also fails to cite any precedent establishing that these interests are purely “speculative” and can never be “compelling.” Majority op. at 1246.
II.
The First District correctly decided this case on procedural grounds because the trial court’s temporary injunction order is factually deficient. The majority acknowledges that “competent, substantial evidence” must support each of the four conclusions necessary to justify entry of a temporary injunction. Majority op. at 1265; see North Florida Women’s, 866 So.2d at 615 (“Because the trial court properly applied the controlling law as set forth in *1267 T.W. and because its findings are supported by competent substantial evidence, we sustain its ruling.”). According to the majority, “the challengers did present evidence ... that the Mandatory Delay Law would [impede a woman’s ability to terminate her pregnancy for at least an additional twenty-four hours,] result in additional costs and additional trips to the physician[,] and that any delay could affect the type of procedure being performed.” Majority op. at 1246. But the trial court’s temporary injunction order is not supported by any evidence, much less competent and substantial evidence. As the trial court explained in its order: “No witnesses were presented at the scheduled [eviden-tiary] hearing, and no affidavits or verified statements or declarations were offered into evidence. There was no legislative history or other evidence presented to this [e]ourt.” Gainesville Woman Care, LLC v. State, No. 15-CA-1323, at 11 (Fla. 2d Cir. Ct. July 1, 2015) (Corrected Order Granting Plaintiffs’ Motion for Temporary Injunction).[6] Notably, Dr. Curry’s declaration—the “only evidence” before the trial court—was never offered into evidence. Id. at 10. The majority thus errs in concluding that
the trial court’s order correctly found, based on the evidence presented at the temporary injunction hearing, that there is a substantial likelihood that the Mandatory Delay Law is unconstitutional as a violation of Florida’s fundamental right of privacy and consequently that Petitioners established a substantial likelihood of success on the merits in this case.
Majority op. at 1262 (emphasis added). The majority further errs in concluding that “[t]he trial court’s findings with respect to all four of the prongs of the temporary injunction test were supported by competent, substantial evidence” and “the trial court had the proper evidentiary basis to issue a temporary injunction in this case.” Majority op. at 1265.
The First District also correctly decided this case on procedural grounds because the trial court’s temporary injunction order is legally deficient. In order to obtain a temporary injunction, the party seeking the injunction “must satisfy a four-part test under Florida law: ‘a substantial likelihood of success on the merits; lack of an adequate remedy at law; irreparable harm absent the entry of an injunction; and that injunctive relief will serve the public interest.’ ” Liberty Counsel v. Florida Bar Bd. of Governors, 12 So.3d 183, 186 n.7 (Fla. 2009) (quoting Reform Party of Fla. v. Black, 885 So.2d 303, 305 (Fla. 2004)). “Clear, definite, and unequivocally sufficient factual findings must support each of the four conclusions necessary to justify entry of a preliminary injunction.” City of Jacksonville v. Naegele Outdoor Advert. Co., 634 So.2d 750, 754 (Fla. 1st DCA 1994) (Naegele I), approved, 659 So.2d 1046 (Fla. 1995) (Naegele II). If a temporary injunction is “to be subject to meaningful review, an order granting a temporary injunction must contain more than conelusory legal aphorisms” and “do more *1268 than parrot each tine of the four-prong test.” Naegele II, 659 So.2d at 1048 (quoting Naegele I, 634 So.2d at 753-54); see Fla. R. Civ. P. 1.610(c) (“Every injunction shall specify the reasons for entry .... ”).
The trial court’s order is legally deficient because it does not contain any factual findings—much less sufficient factual findings—regarding the irreparable harm or public interest prongs of the preliminary injunction test.[7] The order merely contains the following conelusory statement: “Plaintiffs have shown ... that irreparable harm will result if the [Mandatory Delay Law] is not enjoined ... and that the relief requested will serve the public interest.” Gainesville Woman Care, LLC v. State, No. 15-CA-1323, at 11 (Fla. 2d Cir. Ct. July 1, 2015) (Corrected Order Granting Plaintiffs’ Motion for Temporary Injunction). With respect to the substantial likelihood of success on the merits prong, the order is legally deficient because it fails to make sufficient factually supported findings about whether the Mandatory Delay Law imposes a significant restriction on the right to abortion, and about the State’s asserted compelling interests. The order is also legally deficient because it improperly conflates three of the four prongs of the preliminary injunction test and, in doing so, renders meaningless the irreparable harm and public interest prongs. See id. at 3-4 (concluding that a finding of a substantial likelihood of success on the merits provides the necessary support for the irreparable harm and public interest prongs). Further, the order is legally deficient because it fails to address the legal requirements for a facial constitutional challenge to a statute.
The majority concedes that the trial court’s order does not contain any factual findings regarding the public interest prong. See majority op. at 1263-434. Nevertheless, the majority concludes that “[i]n light of finding that the Mandatory Delay Law is likely unconstitutional ... it would be specious to require, as the First District suggests, that the trial court make additional factual findings that enjoining the law would also be in the public interest.” Id. The majority’s reasoning fundamentally misapprehends the four-prong test for a preliminary injunction. Factual findings must support each of the four conclusions necessary to justify entry of a preliminary injunction. Naegele I, 634 So.2d at 754; see Naegele II, 659 So.2d at 1048. The majority thus renders meaningless the public interest prong by turning the four-prong test for a preliminary injunction into a three-prong test.
III.
I disagree with the majority’s resolution of the substantive constitutional issue. The majority claims that “there is no threshold requirement that a petitioner must show by ‘sufficient factual findings’ that a law imposes a significant restriction on a woman’s right” to abortion before strict scrutiny applies because statutes regulating the right to abortion implicate the right of privacy. Majority op. at 1256. But the majority’s claim cannot be reconciled with this Court’s precedent imposing such a threshold requirement. In North Florida Women’s and T.W., this Court only applied strict scrutiny to statutes regulating the right to abortion after determining that each statute imposed a “significant restriction” on the right to abortion. See North Florida Women’s, 866 So.2d at 631-32; T.W., 551 So.2d at 1194-95. The majority simply cannot explain why this Court found it necessary to conclude—before applying strict scrutiny review—that the statutes at issue in both of those cases *1269 imposed a “significant restriction” on the right to abortion if the only relevant inquiry is whether a statute regulating the right to abortion furthers a compelling state interest through the least restrictive means. This Court has no evidence before it that a twenty-four hour waiting period is a significant restriction on the right to abortion. All we have are the pleadings—which do not constitute evidence—and Dr. Curry’s speculations that a duly-enacted law additionally burdens the right to abortion. The majority’s unjustifiable departure from North Florida Women’s and T.W. does not satisfy any level of scrutiny.
The majority claims that “[p]ut into the appropriate context, it is clear that T.W. in no way created a threshold requirement that a challenger must prove through sufficient, factually supported findings that a law imposes a significant restriction on a woman’s right of privacy before the law is reviewed under strict scrutiny.” Majority op. at 1255-56. The majority’s claim cannot be reconciled with T.W., which explicitly distinguishes between statutes that impose “significant restrictions” on the right to abortion and statutes that impose “insignificant burdens” on the right to abortion:
Under Florida law, prior to the end of the first trimester, the abortion decision must be left to the woman and may not be significantly restricted by the state. Following [the first trimester], the state may impose significant restrictions only in the least intrusive manner designed to safeguard the health of the mother. Insignificant burdens during [the first or second trimester] must substantially further important state interests.
T.W., 551 So.2d at 1193 (emphasis added) (footnote omitted). T.W. thus makes clear beyond any doubt that statutes imposing “significant restrictions” on the right to abortion are subject to strict scrutiny while statutes imposing “insignificant burdens” on the right to abortion are not.
The majority claims that “the significant restriction requirement that the State maintains is appropriate would equate the Florida constitutional inquiry in the termination of pregnancy context to the federal ‘undue burden’ test.” Majority op. at 1256. But this assertion flies in the face of what the Court said in T.W. before the federal undue burden test existed. In Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), “a plurality of the Court abandoned the ‘strict’ scrutiny standard in favor of the less stringent ‘undue burden’ standard.” North Florida Women’s, 866 So.2d at 634. “Under the ‘undue burden’ standard, a government regulation cannot have the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.” Id. at 634 n.46. In North Florida Women’s we rejected the undue burden standard and maintained strict scrutiny review when reviewing statutes regulating the right to abortion. But we also maintained T.W.’s rule that strict scrutiny review of statutes regulating the right to abortion applies only if the statutes impose a “significant restriction” on the right to abortion.
The majority claims that “[a]ny law that implicates the right of privacy is presumptively unconstitutional, and the burden falls on the State to prove both the existence of a compelling state interest and that the law serves that compelling state interest through the least restrictive means.” Majority op. at. 1256. But the majority fails to acknowledge that the extent of the right of privacy “must be considered in the context in which it is asserted and may not be considered wholly independent of those circumstances.” Florida Bd. of *1270 Bar Examiners re Applicant, 443 So.2d 71, 74 (Fla. 1983). As this Court has explained:
Practically any law interferes in some manner with someone’s right of privacy. The difficulty lies in deciding the proper balance between this right and the legitimate interest of the state. As the representative of the people, the legislature is charged with the responsibility of deciding where to draw the line. Only when that decision clearly transgresses private rights should the courts interfere.
Stall v. State, 570 So.2d 257, 261 (Fla. 1990) (quoting T.W., 551 So.2d at 1204 (Grimes, J., concurring in part, dissenting in part)). This Court’s prior application of a threshold significant restriction requirement to challenges to statutes regulating the right to abortion simply recognizes that the right of privacy is not boundless.
The majority claims that “[t]he Mandatory Delay Law, as opposed to the Woman’s Right to Know Act, turns informed consent on its head, placing the State squarely between a woman who has already made her decision to terminate her pregnancy and her doctor who has decided that the procedure is appropriate for his or her patient.” Majority op. at 1258. But the majority takes an unreasonably narrow view of the purpose of informed consent. This Court has acknowledged that the State has a compelling interest in safeguarding an individual’s “bodily integrity and patient autonomy” by “prohibiting] termination of pregnancy procedures from being performed or induced unless either the referring physician or the physician performing the procedure first obtains informed and voluntary written consent from the patient.” State v. Presidential Women’s Ctr., 937 So.2d 114, 115-16 (Fla. 2006). The Mandatory Delay Law enhances informed consent by affording a woman sufficient time to privately consider required relevant information concerning “the medical risks of terminating or not terminating a pregnancy.” Id. at 119. The Mandatory Delay Law also enhances voluntary consent—and thereby maintains the integrity of the medical profession—by making a woman’s post-informed reflective time free from undue influence by a physician or clinic personnel.
The analysis employed by the majority gives no consideration to the full context of the decision to obtain an abortion. The plurality opinion in Casey describes this context:
Abortion is a unique act. It is an act fraught with consequences for others: for the woman who must live with the implications of her decision; for the persons who perform and assist in the procedure; for the spouse, family, and society which must confront the knowledge that these procedures exist, procedures some deem nothing short of an act of violence against innocent human life; and, depending on one’s beliefs, for the life or potential life that is aborted.
Casey, 505 U.S. at 852, 112 S.Ct. 2791. The majority ignores the reality that adequate reflection regarding such a uniquely consequential choice necessarily furthers the purpose of informed consent. “The idea that important decisions will be more informed and deliberate if they follow some period of reflection,” id. at 885, 112 S.Ct. 2791, is entirely reasonable.
[I]n providing time for reflection and reconsideration, the waiting period helps ensure that a woman’s decision to abort is a well-considered one .... It “is surely a small cost to impose to ensure that the woman’s decision is well considered in light of its certain and irreparable consequences on fetal life, and the possible effects on her own.”
Id. at 969-70 (quoting City of Akron v. Akron Ctr. for Reprod. Health, Inc., 462 U.S. 416, 474, 103 S.Ct. 2481, 76 L.Ed.2d *1271 687 (1983) (O’Connor, J., dissenting)). Although we have rejected Casey’s undue burden standard, the reasoning of Casey regarding the purpose of informed consent in the abortion context is independent of that standard. And that reasoning simply recognizes the obvious.
The majority claims that “the trial court did not err in not explicitly deciding the disputed issue of what standard is appropriate,” majority op. at 1265, for a facial constitutional challenge to a statute regulating the right to abortion because “[t]he trial court’s finding that the Mandatory Delay Law imposes a significant restriction on all women’s fundamental right of privacy, by its plain terms, is sufficient to support an injunction barring the application of the law in its entirety.” Majority op. at 1264. But the trial court’s temporary injunction order will be searched in vain for any finding that the Mandatory Delay law imposes a “significant restriction” on the right to abortion. Regardless, the majority fails to acknowledge that—as a matter of Florida law—the no-set-of-circumstances test standard applies to Petitioners’ facial constitutional challenge. See, e.g., Abdool v. Bondi, 141 So.3d 529, 538 (Fla. 2014) (“For a statute to be held facially unconstitutional, the challenger must demonstrate that no set of circumstances exists in which the statute can be constitutionally applied.”); Florida Dept. of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla. 2005) (“[A] determination that a statute is facially unconstitutional means that no set of circumstances exists under which the statute would be valid.”); see also Cashatt v. State, 873 So.2d 430, 434 (Fla. 1st DCA 2004) (“A facial challenge to a statute is more difficult than an ‘as applied’ challenge, because the challenger must establish that no set of circumstances exists under which the statute would be valid.”). Based on the record here, there is no basis for concluding that Petitioners have established a likelihood that they will prevail in meeting their heavy burden to maintain a successful facial challenge in this case.
POLSTON, J., concurs.

. The trial court’s order states that "[t]he parties agreed that the [c]ourt was to consider the pleadings, together with the declarations filed with Plaintiffs’ motion and supplemental reply, and that the parties were authorized but not required to present any witnesses or other evidence at [the evidentiary hearing].’’ Gainesville Woman Care, LLC v. State, No. 15-CA-1323, at 1 (Fla. 2d Cir. Ct. July 1, 2015) (Corrected Order Granting Plaintiffs’ Motion for Temporary Injunction). Nonetheless, it is not clear from the record- on appeal that the State agreed that the trial court was to consider Plaintiffs’ pleadings and declarations as evidence, or that such documents meet the evidentiary requirements of Florida law.

. The State conceded the lack of an adequate remedy prong below.